No. 17,067.

## THE STATE *v.* BRUNER ET AL.

*Criminal Law.—Indictment.—Sufficiency of.—Conspiracy.—False Pretenses.*—Where an indictment alleged substantially that A, B, C and D entered into a conspiracy to cause and compel a certain municipal corporation to pay an extortionate and exorbitant sum of money for the construction of a public work, by means of certain alleged false pretenses, and thereby to fraudulently obtain from such corporation the sum of $5,000, the means for so obtaining such sum of money being that A should make a bid for a certain amount, much above the reasonable and adequate price of construction, and that B, C and D should each bid above A's bid, by which means A should obtain the contract for the work, and pay B, C and D $300 each, such indictment did not state a public offense within the letter and spirit of the criminal statutes of this State.

From the Vigo Circuit Court.

*A. G. Smith,* Attorney-General, *M. C. Hamill,* Prosecuting Attorney, *I. N. Pierce* and *J. T. Crandell,* for the State.

*J. Jump, J. E. Lamb, J. C. Davis, C. McNutt, J. G. McNutt, S. B. Davis, J. C. Robinson, S. M. Reynolds, G. W. Faris* and *S. R. Hamill,* for appellees.

DAILEY, J.—The defendants, appellees in this cause, on July 2, 1892, were indicted in one count, by the grand jurors of Vigo county, on a charge of having engaged in a conspiracy to commit a felony. Relieved of all legal verbiage, it charges that the defendants combined, conspired, and confederated among themselves, and with two other persons therein named, to cause and compel the city of Terre Haute to pay an extortionate and exorbitant sum of money for the construction of a public work, by means of certain alleged false pretenses, and thereby to fraudulently obtain from the said city the sum of $5,000. The means alleged, briefly stated, are that the city had lawfully ordered the construction of a sewer,

called and known as "The outlet extension of the Craw-
ford street sewer, from First street to the river;" that all
the defendants, except Cooper, were contractors in the
construction of this class of municipal works, and said
Cooper was then the engineer of said city; that pursuant
to said object, they agreed with one Jesse Robertson, and
one William R. Mercer, that the last named parties
should prepare and present a proposal for the perform-
ance of said work in the sum of $15,000, and the de-
fendants, Bruner, Irwin, Fullerton and Kinser, were
each to prepare and make bids therefor in sums in ex-
cess of said amount, so that the contract might be
awarded to said Robertson and Mercer, and thereupon
the successful parties agreed and were to pay the defend-
ants, Bruner, Irwin and Fullerton, each the sum of
$300; that pursuant to this conspiracy, said Robertson
and Mercer prepared and submitted to the common coun-
cil of the city of Terre Haute, a proposal to construct and
complete said improvement in and for the sum of $15,000,
and the defendants, Bruner, Irwin, Fullerton and Kin-
ser, each made out and presented to said council, bids in
excess of said amount, knowing at the time that the rea-
sonable and adequate price of the construction and
completion of said work would not exceed the sum of
$10,000; that all of said bids were exorbitant, false and
fraudulent, and were made with the intent, object and
purpose of obtaining thereby, and by color and means
thereof, the sum of $5,000 of the property and money
belonging to said city.   On September 24, 1892, the de-
fendants separately moved to quash the indictment.
This motion was taken under advisement, and after-
wards, to wit, on June 17, 1893, the court sustained the
motion, and discharged the defendants from any further
prosecution therein, to which ruling of the court the ap-
pellant excepted.   This ruling presents the only ques-

The State *v.* Bruner *et al.*

tion in the record. The error assigned is, "That the court below erred in sustaining the motion to quash the indictment herein." Is the indictment sufficient? It is claimed by the appellant that it is predicated on section 2139, R. S. 1881, and that in connection with this section, section 2204, R. S. 1881, as amended by the acts of 1883, p. 126, is necessarily involved. Section 2139, *supra*, relating to conspiracies, reads as follows: "Any person or persons who shall unite or combine with any other person or persons, for the purpose of committing a felony; or any person or persons who shall knowingly unite with any other person or persons, or body or association or combination of persons, whose object is the commission of a felony or felonies, shall, upon conviction thereof, be fined in any sum not more than five thousand dollars nor less than twenty-five dollars, and imprisoned in the State prison not more than fourteen years nor less than two years." The amended act relating to false pretenses, acts of 1883, *supra*, is as follows: "Whoever, with intent to defraud another, designedly, by color of any false token or writing, or any false pretense, obtains the signature of any person to any written instrument, or obtains from any person any money, or the transfer of any bond, bill, receipt, promissory note, draft, or check, or thing of value, or whoever sells, or barters, or disposes of, or offers to sell, barter or dispose of, any transfer, bond, bill, receipt, promissory note, draft, or check, or any thing of value, knowing the signature of the maker, indorser, or guarantor thereof to have been obtained by any false pretense, shall be imprisoned in the State prison not more than seven years nor less than one year, and be fined in any sum not more than one thousand dollars nor less than ten dollars." The appellees urge that neither of the statutes makes any of the acts charged to have been done a felony,

and, also, if by any possibility it could be held that the acts and things specified are in violation of law under section 2139, *supra,* and section 2204, *supra;* as amended by the acts of 1883, Elliott's Supp., section 341, yet the indictment fails to state a case against either of the defendants. In other words, they insist that the entering into a combination to obtain money, in the manner set out in the indictment, is not made criminal by any statute of this State, and hence can not constitute a felony, as there are no common law crimes in Indiana.

In Sutherland on Statutory Constructions, certain rules are declared for the guidance of courts, in determining the sufficiency of an indictment. Among these are the following: Penal statutes, whether civil or criminal, and especially if criminal, must be strictly construed. A liberal construction of such statutes is never permitted, but the strict letter of the law, or such a plain and strict construction as admits of no doubt, must clearly declare an act criminal before the person or persons doing it can ever be indicted and placed on trial therefor. In order that an act may be held criminal, it must be expressly included in the words of the statute. An act "can not, and ought not, to be dealt with as a crime unless it is plainly, and without doubt, included in the language of the Legislature," and consideration of the mischief of the old law which did not make the act criminal, and the remedy which the new might have been intended to apply, is not enough, if the act in question is not expressly included in and made criminal by the language of the new, as the language of an enactment is not to be extended, by construction, so as to punish crimes not clearly embraced in it, "not clearly and intelligently described, or included, in the very words of the statute, as well as manifestly intended by the Legislature." Section 348.

If the words of a statute are capable of two construc-
tions, one of which would, while the other would not,
make an act criminal, then the one which would not is
to be taken as the true construction.  Section 352.

''The penal law is intended to regulate the conduct of
people of all grades of intelligence within the scope of
responsibility.  It is therefore essential to its justice and
humanity that it be expressed in language which they
can easily comprehend; that it be held obligatory only
in the sense in which all can and will understand it.
And this consideration presses with increasing weight
according to the severity of the penalty.  Hence, every
provision affecting any element of a criminal offense in-
volving life or liberty, is subject to the strictest interpre-
tation; and every provision intended for the benefit of
the accused, for the same humane reason, receives the
most favorable construction.

''The rule that penal laws are to be construed strictly
is perhaps not much less old than construction itself.
It is founded on the tenderness of the law for the rights
of individuals; and on the plain principle that the power
of punishment is vested in the Legislature, not in the
judicial department.  It is the Legislature, not the court,
which is to define a crime and ordain its punishment.
The intention of the Legislature is to be collected from
the words they employ.  Where there is no ambiguity
in the words, there is no room for construction.  The
case must be a very strong one, indeed, which would
justify a court in departing from the plain meaning of
words, especially in a penal act, in search of an in-
tention, which the words themselves did not suggest.
To determine that a cause is within the intention of a
statute, its language must authorize us to say so.  It
would be dangerous, indeed, to carry the principle that
a case which is within the reason and mischief of a

The State *v.* Bruner *et al.*

statute is within its provisions so far as to punish a crime not enumerated in the statute because of equal atrocity, or of a kindred character, with those which are enumerated.'' Sutherland on Statutory Constructions, section 349.

''A penal statute can not be extended by implication or construction. It can not be made to embrace cases not within the letter, though within the reason and policy, of the law. Although a case may be within the mischief intended to be remedied by a penal act, that fact affords no sufficient reason for construing it so as to extend it to cases not within the correct and ordinary meaning of its language. And, as a general rule, as where a penalty is affixed by a statute to an act of omission, such penalty is the only punishment or loss incurred by the guilty party. To constitute the offense, the act must be both within the letter and spirit of the law defining it. Penal statutes can never be extended by mere implication to either persons or things not expressly brought within their terms.''

ABBOTT, J., said: ''It would be extremely wrong that a man should, by a long train of conclusions, be reasoned into a penalty when the express words of an act of parliament do not authorize it.'' Sutherland on Statutory Constructions, section 350.

It seems to be conceded, by the appellant and appellees, that the words, ''Whoever, with intent to defraud another,'' in amended section 341, *supra*, include the doing of any of the acts or things thereinafter mentioned with the intent to defraud a city or other public corporation, because the word ''whoever'' clearly refers to a person or persons, and the word ''another,'' also refers to a person or persons, hence in the absence of a statute on the subject, under the rule long established and well settled, a city, as an artificial person, is included.

It is also true that in an indictment for a conspiracy to obtain money by false pretenses, it is not necessary to show, that the money was actually obtained; that the crime of obtaining money by false pretenses was actually consummated. It is enough that a conspiracy to so obtain it actually existed.

It is not disputed, by counsel on either side, that the crime of conspiracy to obtain money by means of false pretenses is a distinct one from that of obtaining money by such pretenses. We need not, therefore, occupy any space in attempting to define the difference between the two offenses.

It is the law that the entering into a combination and conspiracy, by means of such bids, to obtain such a contract and money under it, would constitute an act so morally reprehensible that a party letting a contract thereunder might ignore it and refuse to be bound by it, on the ground that it was obtained illegally by suppressing competition; and a contract so acquired could not be enforced in a civil suit, but it is not all contracts which are forbidden in morals that are made the basis of criminal prosecutions. It is only when our Legislature so enacts, that they can or do constitute felonies.

The case of *People, etc.,* v. *Olson,* 39 N. Y. St. Rep. 295, cited by appellant as analogous to the one under consideration differs, in many essential particulars, from this and is based upon an entirely different statute. It was alleged in that indictment, among other things, that part of the agreement of the conspirators was to prevent any other person from bidding on the work, while in this case the indictment fails to charge anything of the kind, and from aught that appears others were at liberty to, and did, bid at the letting, which was open to the entire public.

The case cited was drawn under subdivision 4, of sec-

tion 168, of the penal code of New York, which reads substantially as follows: "If two or more persons shall conspire * * * to cheat and defraud any person of any property by any means which are in themselves criminal, or to cheat and defraud any person of any property by any means which, if executed, would amount to a cheat," etc.

It was not claimed by the people that the agreement and overt acts charged made a case of conspiracy, with intent to obtain money by means of false pretenses, but simply that it charged an agreement and acts, which at common law amounted to an attempt to cheat, and that compact and attempt having been made criminal by the statute, the indictment was sufficient. Such would be the ruling in this court if we were possessed of a similar statute to guide us.

Our law-makers, in their wisdom, have provided us no such act, and we think the court did not err in sustaining the motion to quash the indictment.

Judgment affirmed.

Filed Nov. 2, 1893.