ATTORNEY FOR APPELLANT
P. Stephen Miller
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE
Curtis T. Hill, Jr.
Attorney General of Indiana

Ellen H. Meilaender
Laura R. Anderson
Andrew A. Kobe
Deputy Attorneys General
Indianapolis, Indiana

# In the
# Indiana Supreme Court



FILED
Dec 21 2017, 3:59 pm
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

No. 02S03-1709-CR-611

DARRYL CALVIN,

*Appellant (Defendant),*

v.

STATE OF INDIANA,

*Appellee (Plaintiff).*

Appeal from the Allen Superior Court 6, No. 02D06-1604-F4-30
The Honorable John F. Surbeck, Jr., Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 02A03-1701-CR-93

**December 21, 2017**

**Rush, Chief Justice.**

Indiana's habitual-offender statutes count *all* prior non-Indiana felonies as Level 6 felonies and do not allow a habitual-offender finding based only on two Level 6 felonies. Relying on these statutes, Calvin argues that his two prior Illinois felonies are insufficient to support his habitual-offender enhancement. The State responds that this result is absurd, so we should graft new language onto the statutes.

We reject the State's invitation. The habitual-offender statutes' plain meaning, though curious, has prevailed in Indiana for nearly thirty years. Judicially rewriting it now would violate separation-of-powers principles and our strict construction of criminal statutes. We thus reverse Calvin's habitual-offender enhancement for insufficient evidence and remand to the trial court.

## Facts and Procedural History

Darryl Calvin broke into a Fort Wayne home and stole a PlayStation 4, a sixty-inch plasma television, and a pair of gym shoes. Thanks to a vigilant neighborhood watch, he was promptly caught and arrested.

The State charged Calvin with Level 4 felony burglary and alleged that he was a habitual offender based on two prior convictions. Both of those convictions were Class 1 felony residential burglary convictions from Illinois—one from 1992 and the other from 1998. A jury convicted Calvin on the new burglary charge and found that he was a habitual offender. The trial court sentenced him to six years for the burglary, and ten additional years for the habitual-offender enhancement.

Calvin challenged the enhancement on appeal, arguing that his two Illinois felonies could not make him a habitual offender since Indiana's habitual-offender statutes treat all non-Indiana felonies as Level 6 felonies, and two Level 6 felonies cannot support the enhancement. The State responded that this reading leads to absurd results by treating defendants differently based on where they committed their prior offenses.

The Court of Appeals affirmed Calvin's habitual-offender enhancement. First, it agreed with the State that the absurdity doctrine applied. Calvin v. State, 80 N.E.3d 226, 228–29 (Ind. Ct. App. 2017). Then, the court compared Calvin's Illinois burglaries to burglary in Indiana and concluded that his out-of-state convictions should be treated as Level 4 felonies. Id. at 229.

We granted Calvin's petition to transfer, vacating the Court of Appeals opinion. Ind. Appellate Rule 58(A).

## Standard of Review

We first address the meaning of Indiana's habitual-offender statutes. This is an issue of statutory interpretation, so our review is de novo. Day v. State, 57 N.E.3d 809, 811 (Ind. 2016).

We then determine whether, under that interpretation, sufficient evidence supports Calvin's habitual-offender enhancement. See id.; Pierce v. State, 29 N.E.3d 1258, 1264–65 (Ind. 2015).

### Discussion and Decision

Under the plain meaning of Indiana's habitual-offender statutes, prior non-Indiana felonies count as Level 6 felonies. The State argues that this leads to absurd results, but we decline to cast aside the plain meaning through the absurdity doctrine.

**I. Indiana's Habitual-Offender Statutes Treat Non-Indiana Felonies as Level 6 Felonies.**

A habitual-offender finding is not a separate crime, but an enhancement that attaches to an underlying felony. Ind. Code § 35-50-2-8(j) (2017). Here, Calvin's Level 4 felony burglary conviction was enhanced under Indiana Code subsection 35-50-2-8(b):

> (b) A person convicted of murder or of a Level 1 through Level 4 felony is a habitual offender if the state proves beyond a reasonable doubt that:
> (1) the person has been convicted of two (2) prior unrelated felonies; and
> (2) at least one (1) of the prior unrelated felonies is not a Level 6 felony or a Class D felony.

I.C § 35-50-2-8(b) (Supp. 2016).

But Calvin argues that he cannot be a habitual offender under subsection 8(b) because both of his prior felonies count as Level 6 felonies. He relies on the statutory definition of "Level 6 felony conviction":

> (a) As used in this chapter, "Level 6 felony conviction" means:
> (1) a conviction in Indiana for:
> (A) a Class D felony, for a crime committed before July 1, 2014; or
> (B) a Level 6 felony, for a crime committed after June 30, 2014; and
> (2) a conviction, in any other jurisdiction at any time, with respect to which the convicted person might have been imprisoned for more than one (1) year.

I.C. § 35-50-2-1(a) (2014). So Calvin contends that his two prior Illinois convictions are Level 6 felonies under subsection (a)(2) and thus cannot support his habitual-offender enhancement.

3

For most of this appeal, the State agreed with Calvin's plain-meaning interpretation of these statutes and argued only that it led to absurd results. But at oral argument, the State noted for the first time that the definitions section defines the term "Level 6 felony *conviction*," I.C. § 35-50-2-1(a) (emphasis added), while the habitual-offender statute says only "Level 6 felony," I.C. § 35-50-2-8(b).

The parties' initial agreement was correct.[1] Applying the defined term "Level 6 felony conviction" to subsection 8(b) gives meaning to the legislature's decision to include non-Indiana felonies in the definition of a "Level 6 felony conviction." I.C. § 35-50-2-1(a)(2). That part of the definition would serve no purpose if it applied only where the legislature used the full "Level 6 felony conviction" term. See I.C. §§ 35-50-2-6(c), -7(d), (f) (2014); In re ITT Derivative Litig., 932 N.E.2d 664, 670 (Ind. 2010) ("We interpret a statute in order to give effect to every word and render no part meaningless if it can be reconciled with the rest of the statute.").

Applying the "Level 6 felony conviction" definition in subsection 8(b) also aligns with nearly thirty years of Indiana precedent. Our Court of Appeals has consistently said that the habitual-offender statutes count non-Indiana felonies as the lowest-level Indiana felonies. See Rowold v. State, 629 N.E.2d 1285, 1287 (Ind. Ct. App. 1994); Cain v. State, 594 N.E.2d 835, 842–43 (Ind. Ct. App.), clarified on reh'g, 599 N.E.2d 625 (Ind. Ct. App. 1992); Johnson v. State, 575 N.E.2d 282, 285 (Ind. Ct. App. 1991), trans. denied. In fact, Judge Shields dissented in Johnson, making the same argument the State makes today. 575 N.E.2d at 286–87 (Shields, J., dissenting) ("I find it difficult to accept the legislature intended to show favoritism and leniency to out-of-state felons."). We denied transfer, leaving intact Johnson's statement that weighing Indiana felonies heavier than non-Indiana felonies "appears to be the unmistakable choice of the legislature." Id. at 285 (majority opinion).

We finally note that if non-Indiana felonies could count as something other than Level 6 felonies, we would need a method for deciding what level to assign them. Yet the legislature has not provided one. This absence of legislative direction contrasts with the many statutes where the legislature allows the use of non-Indiana convictions if their elements are "substantially similar to

---

[1] We generally agree with the State's more recent argument that defined terms apply only when the legislature uses the exact defined term. See Chi. & E. Ill. R.R. v. State ex rel. Ketcham, 153 Ind. 134, 139, 51 N.E. 924, 926 (1898) ("[W]here the legislature expressly states the meaning which is to be given to a term used in an act, that meaning must be given to such term as so used.").

the elements of" corresponding Indiana convictions. E.g., Ind. Code §§ 4-33-8-11(d), (e), -35-6.5-11(d), (e) (2017) (disqualifications for riverboat and racetrack gambling licenses); I.C. § 7.1-1-3-13.5 (2017) (definition of "[c]onviction for operating while intoxicated"); I.C. § 31-19-9-8(a) (2017) (exceptions to parental consent for adoption); I.C. § 33-23-6-2(f) (2017) (ineligibility for mediation); I.C. §§ 35-42-2-1(g), -1.3(b) (2017) (elevations for battery and domestic battery); I.C. § 35-47-4-5(a) (2017) (unlawful possession of a firearm by a serious violent felon). Here, the lack of a statutory method for comparing non-Indiana convictions bolsters the plain-language mandate that all non-Indiana felonies count as Level 6 felonies for habitual-offender enhancements.[2]

With this plain meaning in hand, we turn to the State's claim that it leads to absurd results.

## II.     We Will Not Increase Criminal Liability by Rewriting Unambiguous Statutes Through the Absurdity Doctrine.

The absurdity doctrine is strong medicine; it defeats even the plain meaning of statutes. Morgan v. State, 22 N.E.3d 570, 575 (Ind. 2014) (citing Storms v. Stevens, 104 Ind. 46, 50, 3 N.E. 401, 403 (1885)). Here, we will not prescribe it to defeat a statutory plain meaning upheld by a trifecta of cases dating back to 1991. See Rowold, 629 N.E.2d at 1287; Cain, 594 N.E.2d at 842–43; Johnson, 575 N.E.2d at 285. As explained above, the first of these cases was decided over a strong and well-reasoned dissent making the same absurdity argument the State now raises. Johnson, 575 N.E.2d at 286–87 (Shields, J., dissenting). That argument is less compelling today, now that the plain meaning has prevailed—and functioned—for nearly three decades.

Invoking the absurdity doctrine here would also expand criminal liability beyond the habitual-offender statutes' long-settled plain meaning—a result at odds with separation-of-powers principles and our narrow construction of criminal statutes.

Separation of powers is explicit in our Constitution. Ind. Const. art. 3, § 1. And the power to legislate "is vested exclusively in the Legislature under Article 4, Section 1 of the Indiana Constitution." Paul Stieler Enters. v. City of Evansville, 2 N.E.3d 1269, 1277 (Ind. 2014). We accordingly cannot rewrite statutes:

> The courts cannot venture upon the dangerous path of judicial legislation to supply omissions or remedy defects in matters

---

[2] Even if we could agree with the dissent that these statutes are ambiguous, we could not ignore the rule of lenity's decree that ambiguity "*must* be resolved against the penalty." Dye v. State, 984 N.E.2d 625, 630 (Ind. 2013) (emphasis added).

> committed to a co-ordinate branch of the government. It is far better to wait for necessary corrections by those authorized to make them, or, in fact, for them to remain unmade, however desirable they may be, than for judicial tribunals to transcend the just limits of their constitutional powers.

R.R. Comm'n of Ind. v. Grand Trunk W. R.R., 179 Ind. 255, 263–64, 100 N.E. 852, 855 (1913). On top of that, the legislature is constitutionally subject to process requirements and political responsibility in ways that the judiciary is not. See Ind. Const. art. 4; John F. Manning, The Absurdity Doctrine, 116 Harv. L. Rev. 2387, 2431, 2437 (2003).

The absurdity doctrine implicates these bedrock principles and thus must be carefully applied—especially to plain-meaning statutes with broad application. Declaring a plain meaning absurd tells the legislature that it may not legislate in that way even if it uses the clearest terms; it invokes "the serious judicial act of declaring certain matters beyond the reach of the political branches." Manning, supra at 2476. That is a bold declaration, even for a single unforeseen application at a statute's periphery. It would be far more drastic here, at the core of the broad habitual-offender statutes. Such a sweeping decision falls more into the policy-setting role of the legislature and less into the job of the judiciary to decide individual cases. City of Lawrence Utils. Serv. Bd. v. Curry, 68 N.E.3d 581, 587 (Ind. 2017) ("The constitution empowers the legislative branch to make law; the judicial branch to decide cases." (quoting Ind. Wholesale Wine & Liquor Co. v. State ex rel. Ind. Alcoholic Beverage Comm'n, 695 N.E.2d 99, 107 (Ind. 1998))).

Separation of powers ties into another reason we do not apply the absurdity doctrine: our narrow construction of criminal statutes. See Bond v. State, 515 N.E.2d 856, 858 (Ind. 1987) ("[Criminal statutes] may not be enlarged beyond the fair meaning of the language used and may not be held to include offenses other than those clearly defined."). One of the two principles underlying this rule is that "legislatures, not courts, should decide what conduct is criminal." Day, 57 N.E.3d at 814.

Equally compelling is the second principle underlying our narrow construction of criminal statutes—that they "should give fair warning about what conduct they prohibit," id. This principle applies most often through the rule of lenity, which requires us to interpret *ambiguous* criminal statutes "in the defendant's favor as far as the language can reasonably support." Id. at 813. And it weighs even more heavily when the *plain meaning* is in the defendant's favor. How can a defendant have fair warning about criminal liability that has no basis in the law's plain meaning?

Such a result would raise serious due-process concerns. See Brown v. State, 868 N.E.2d 464, 467 (Ind. 2007).

For these reasons, we will not apply the absurdity doctrine as an exception to our long-standing rule that we cannot extend criminal statutes through interpretation. See State v. Bruner, 135 Ind. 419, 422–23, 35 N.E. 22, 23–24 (1893). To be clear, we are not abolishing the absurdity doctrine, which we have consistently applied since the early days of our 1851 Constitution. See, e.g., Morgan, 22 N.E.3d at 576; Coleman v. State, 253 Ind. 627, 632–33, 256 N.E.2d 389, 391 (1970); Helms v. Am. Sec. Co. of Ind., 216 Ind. 1, 8–9, 22 N.E.2d 822, 825 (1939); State v. Sopher, 157 Ind. 360, 372, 61 N.E. 785, 789 (1901); City of Jeffersonville v. Weems, 5 Ind. 547, 549 (1854). This case, though, falls outside the doctrine's boundaries. Regardless of whether we can discern the legislature's reasons for writing the habitual-offender statutes as it did, we cannot rewrite—and certainly cannot broaden—them through the absurdity doctrine. Any change must instead fall to the legislature's corrective pen.

**Conclusion**

Under Indiana's habitual-offender statutes, all non-Indiana felonies count as Level 6 felonies. Yes, this is peculiar and leads to incongruous results—especially when the non-Indiana felonies are grievous. But this plain meaning has prevailed for nearly three decades, and separation of powers and our strict construal of criminal statutes stop us from declaring it absurd.

Calvin's two Illinois felonies thus count as Level 6 felonies under the habitual-offender statutes. But Indiana Code subsection 35-50-2-8(b) does not allow a habitual-offender enhancement based only on two Level 6 felonies. We therefore reverse Calvin's habitual-offender enhancement as unsupported by sufficient evidence and remand for retrial on that enhancement. See Dexter v. State, 959 N.E.2d 235, 240 (Ind. 2012) ("[R]etrial on a sentencing enhancement based on a prior conviction is permitted even where the enhancement is reversed because of insufficient evidence.").

David, Slaughter, and Goff, JJ., concur.

Massa, J., dissents with separate opinion.

7

**Massa, J., dissenting.**

Absurd results don't always trigger the absurdity doctrine. The Court's opinion explains why that is wise. As it notes with respect to separation of powers, "'the serious judicial act of declaring certain matters beyond the reach of the political branches'" should almost always be avoided. Supra at *6 (quoting John F. Manning, The Absurdity Doctrine, 116 Harv. L. Rev. 2387, 2476 (2003)).

But in my judgment, we need not invoke the doctrine here to avoid an outcome that is, if not absurd, at least "peculiar," as the Court mildly puts it. Supra at *7. It is hard to believe that our legislators intended an Illinois murder conviction be treated the same as writing a bad check under our serious habitual offender statute.[1] Why they have not acted in response to contrary Court of Appeals opinions for two decades is curious, as well. Perhaps because our precedents never went this far and, in fact, suggest a different outcome. See Shelton v. State, 490 N.E.2d 738, 744 (Ind. 1986); Slocumb v. State, 573 N.E.2d 427, 429 (Ind. 1991) (each discussing evidence of federal or out-of-state statutes upon which convictions were based and their prescribed sentences). I thus respectfully dissent.

Long before California made "three strikes and you're out" a familiar phrase in the national crime debate,[2] Indiana was using a habitual offender law to punish recidivists.[3] These laws

---

[1] See Ind. Code § 35-43-5-5 (providing check deception is a Level 6 felony if the amount is greater than $750).
[2] See The "Three Strikes and You're Out" Law—A Preliminary Assessment, Cal. Legis. Analyst's Office (Jan. 6, 1995), http://www.lao.ca.gov/reports/1995/status_check_the_three_strikes_and_youre_out_law_a_preliminary_assessment.pdf (discussing 1994 Cal. Stat. Ch. 12, § 1, 71).
[3] Ind. Code § 35-50-2-8 (Supp. 1978).

occasionally have vexed our appellate courts[4] and have been moderated over time.[5]  Amendments have unintentionally injected ambiguity into the statutes, and so it is with the portion we consider today.

Unlike three decades ago, we no longer punish habitual offenders with a full thirty years on top of their sentence for the instant crime.  I.C. § 35-50-2-8 (Supp. 1978).  The statutes wisely and more humanely now treat different recidivists differently, based on the severity of the instant offense and their prior convictions.  See I.C. § 35-50-2-8 (2017).  The law in question today attempts to do just that.  Under its terms, if a defendant commits a serious felony, and he has two priors, then at least one of those priors must be a *serious* offense to sustain this particular habitual finding and the more severe sanction it carries.  See id. -8(b).

This rather simple proposition hides in a fog of statutory definitions and classifications that the Court today finds unambiguous.  A recognition of ambiguity would allow for a more common-sense construction of the statute.

If at least one of the predicates has to be serious, the rub here, then, is what constitutes a *minor* felony offense?  That is simple enough for Indiana priors:  a Class D felony before the most recent rewrite of the criminal code, a Level 6 thereafter.  But what about low-level felony convictions from other states?  Here the legislature used the traditional line of demarcation between felonies and misdemeanors—imprisonment for at least a year—to define low-level felonies from other states, which otherwise might use a different nomenclature of class or level, too varied to be included by specific reference.[6]  This doesn't mean they meant *all* out-of-state felonies are Level

---

[4] See, e.g., Hensley v. State, 497 N.E.2d 1053 (Ind. 1986); State v. Downey, 770 N.E.2d 794 (Ind. 2002); Mills v. State, 868 N.E.2d 446 (Ind. 2007); Peoples v. State, 929 N.E.2d 750 (Ind. 2010); Dye v. State, 972 N.E.2d 853 (Ind. 2012); Jones v. State, 569 N.E.2d 975 (Ind. Ct. App. 1991); Johnson v. State, 575 N.E.2d 282 (Ind. Ct. App. 1991), trans. denied; Cain v. State, 594 N.E.2d 835 (Ind. Ct. App.), clarified on reh'g, 599 N.E.2d 625 (Ind. Ct. App. 1992); Rowold v. State, 629 N.E.2d 1285 (Ind. Ct. App. 1994); Schnepp v. State, 768 N.E.2d 1002 (Ind. Ct. App. 2002), trans. denied; Olatunji v. State, 788 N.E.2d 1268 (Ind. Ct. App. 2003), trans. denied; Townsend v. State, 793 N.E.2d 1092 (Ind. Ct. App. 2003), trans. denied; Goodman v. State, 863 N.E.2d 898 (Ind. Ct. App. 2007), trans. denied; Howard v. State, 873 N.E.2d 685 (Ind. Ct. App. 2007).
[5] See Johnson v. State, 75 N.E.3d 549 (Ind. Ct. App. 2017), vacated on other grounds (tracing the evolution of Indiana's habitual offender statute).
[6] See generally *Black's Law Dictionary* 736 (10th ed. 2014) (defining "felony" as "a serious crime usu[ally] punishable by imprisonment for more than one year or by death"); I.C. § 35-50-2-1(b) (defining "felony conviction," under the habitual offender statute, as a conviction for which a person may be imprisoned for more than one year);

6s, regardless of severity. They certainly could have been more precise in their drafting, but their imprecision does not dictate this windfall for serious habitual offenders who built their records victimizing people in other states.

Here, Calvin is an unrepentant burglar. An Indiana jury found him guilty of a residential burglary. That same jury then learned he had two prior convictions for the same serious crimes in Illinois and rightly found him to be a habitual offender. But now we are to pretend those serious crimes weren't so serious after all because of *where* they were committed. If that is not quite absurd, it is beyond peculiar.

Coincidentally, if not ironically, on this very day, I have written for the Court interpreting a different section of the habitual offender statute to a result nearly as odd. See Johnson v. State, 32S05-1707-CR-469, -- N.E.3d -- (Ind. Dec. 21, 2017). At least the possibly unintended consequence at work in Johnson won't be repeated thanks to recent statutory amendment. Perhaps the legislature might spare this Court from further peculiar holdings by fixing this section, as well.[7]

---

Model Penal Code § 1.04(2) ("A crime is a felony if . . . persons convicted thereof may be sentenced . . . in excess of one year."); 18 U.S.C.A. § 3156(a)(3) (2015) (defining felony, for purposes of release and detention pending trial, as "an offense punishable by a maximum term of imprisonment of more than one year").

[7] See generally Richard A. Galt, The Use of Out-Of-State Convictions for Enhancing Sentences of Repeat Offenders, 5 Alb. L. Rev. 1133, 1154 (1994) (surveying the different approaches states have taken regarding the use of out-of-state predicate offenses, and concluding "[a] system that considers prior convictions when sentencing defendants must reflect how the prior behavior compares to the norms of the host state. However, at the same time, it must not allow technical loopholes to overly constrain the power of the state to hold criminals accountable for their actions"); Wayne A. Logan, Horizontal Federalism in an Age of Criminal Justice Interconnectedness, 154 U. Pa. L. Rev. 257, 329-30 (2005) (considering states' use "of criminal convictions rendered by fellow sovereign state governments" and the "willingness to use one another's criminal law dispositions . . . to expand the bounds of crime control").