Vaidik, Chief Judge, dissenting.
[16] I agree with the majority that juveniles have a constitutional right to be present at delinquency and probation fact-finding hearings. But my agreement with the majority ends here.
[17] Indiana Code section 31-32-5-1, the juvenile waiver-of-rights statute, governs the waiver of "any rights " guaranteed to a child under the United States and Indiana Constitutions and sets forth three ways that waiver can occur:
Any rights guaranteed to a child under the Constitution of the United States, the Constitution of the State of Indiana, or any other law may be waived only :
(1) by counsel retained or appointed to represent the child if the child knowingly and voluntarily joins with the waiver;
(2) by the child's custodial parent, guardian, custodian, or guardian ad litem if:
(A) that person knowingly and voluntarily waives the right;
(B) that person has no interest adverse to the child;
(C) meaningful consultation has occurred between that person and the child; and
(D) the child knowingly and voluntarily joins with the waiver; or
(3) by the child, without the presence of a custodial parent, guardian, or guardian ad litem, if:
(A) the child knowingly and voluntarily consents to the waiver; and
(B) the child has been emancipated under IC 31-34-20-6 or IC 31-37-19-27, by virtue of having married, or in accordance with the laws of another state or jurisdiction.
(Emphases added). I believe that Section 31-32-5-1 is unambiguous and therefore must be given its clear and plain meaning. See State v. Evans , 810 N.E.2d 335, 337 (Ind. 2004) ("If a statute is unambiguous, that is, susceptible to but one meaning, we must give the statute its clear and plain meaning." (quotation omitted) ), reh'g denied. Under the plain meaning of this statute, any right guaranteed to a child by the constitution (which we all agree includes the right to be present at delinquency and probation fact-finding hearings) may be waived in only one of three ways, and if *776 one of these three ways is not satisfied, the right simply may not be waived.
[18] In addition, I believe that reading the statute this way fits in with the structure of the juvenile code as a whole: to protect children. See ESPN, Inc. v. Univ. of Notre Dame Police Dep't , 62 N.E.3d 1192, 1195 (Ind. 2016) ("Our first task when interpreting a statute is to give its words their plain meaning and consider the structure of the statute as a whole."). The juvenile-justice system is founded on the notion of parens patriae, which allows the court the power to step into the shoes of the parents; this is because children, by definition, are not assumed to have the capacity to take care of themselves. In re K.G. , 808 N.E.2d 631, 635 (Ind. 2004). As our Supreme Court explained in K.G. , although children generally are protected by the same constitutional guarantees against governmental deprivations as adults, the State is entitled to adjust its legal system to account for children's vulnerability and their needs for concern, sympathy, and paternal attention. Id. at 636. Moreover, it is the policy of this State and the purpose of the juvenile code to "ensure that children within the juvenile justice system are treated as persons in need of care, protection, treatment, and rehabilitation." Ind. Code § 31-10-2-1(5).
[19] My colleagues, however, believe that the legislature could not have intended for the juvenile waiver-of-rights statute to apply to a juvenile's right to be present at delinquency and probation fact-finding hearings because applying the statute to the right to be present produces "absurd" results. Slip op. at ----. The Indiana Supreme Court recently examined the absurdity doctrine in Calvin v. State , 87 N.E.3d 474 (Ind. 2017). In that case, the State argued that under the plain meaning of Indiana's habitual-offender statutes, the fact that prior non-Indiana felonies count as Level 6 felonies (and a habitual-offender finding cannot be based on two Level 6 felonies) leads to absurd results. Our Supreme Court-acknowledging that the absurdity doctrine is "strong medicine" that can defeat the plain meaning of statutes-concluded that the absurdity doctrine did not apply. Slip op. at 5. The Court reasoned that case law had upheld the plain meaning of the statutes for nearly three decades and that invoking the absurdity doctrine would "expand criminal liability beyond the habitual-offender statutes' long-settled plain meaning-a result at odds with separation-of-powers principles and our narrow construction of criminal statutes." Id. The Court specifically noted that "the legislature is constitutionally subject to process requirements and political responsibility in ways that the judiciary is not." Id. at 478.
[20] I believe that many of these same concerns apply here and that this case likewise "falls outside the doctrine's boundaries" given the plain meaning of Section 31-32-5-1. Id. at 479. Admittedly, this case is difficult because R.R. was over seventeen years old when he failed to appear, as opposed to ten years old. But Section 31-32-5-1 does not make distinctions based on age. See Hickman v. State , 654 N.E.2d 278, 281 (Ind. Ct. App. 1995) ("The taped confession at issue was taken on October 7, 1993, at which time Hickman was two months away from his eighteenth birthday. Thus ... Hickman was a 'child' at the time of the confession and entitled to the protections provided to children under our juvenile code."). At the end of the day, this is the call of our legislature, and if this is not what they intended (as my colleagues believe), then "[a]ny change must ... fall to the legislature's corrective pen." Calvin , at 479. Because it is undisputed that R.R. did not waive his right to be present pursuant to one of the three ways set forth in Section 31-32-5-1, I *777 would reverse the juvenile court and remand this case for further proceedings.