



FILED

Apr 09 2026, 1:08 pm

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

I N  T H E

# Indiana Supreme Court

Supreme Court Case No. 25S-CR-265

## Tervarus L. Gary,
*Appellant*

–v–

## State of Indiana,
*Appellee*

Argued: December 18, 2025 | Decided: April 9, 2026

**Corrected**

Appeal from the Elkhart Superior Court
No. 20D01-2405-F5-140
The Honorable Kristine A. Osterday, Judge

On Petition to Transfer from the Indiana Court of Appeals
No. 24A-CR-2712

**Opinion by Chief Justice Rush**

Justices Massa, Slaughter, Goff, and Molter concur.

**Rush, Chief Justice.**

Correctional institutions face persistent challenges in ensuring the safety of both inmates and staff, particularly when dangerous materials infiltrate their facilities. Our Legislature has therefore criminalized the possession of such materials by incarcerated individuals. But, as with any crime, liability attaches only if an inmate voluntarily engages in the prohibited conduct. This case requires us to reconcile that requirement with the restricted freedom detention necessarily entails.

Here, after a defendant's arrest and placement in a jail cell, he realized he had a small canister of pepper spray in his pocket. Although he ultimately alerted officers to its presence, he did not comply with their initial efforts to retrieve it. As a result, the State charged him under a statute prohibiting incarcerated individuals from possessing material capable of causing bodily injury, and a jury found him guilty. On appeal, he challenges the sufficiency of the evidence supporting his conviction, asserting that he did not knowingly possess the pepper spray in jail because his entry into the facility—and thus his continued possession there—was not voluntary.

We disagree. Under the relevant statute, even if an arrestee involuntarily brings prohibited material into a penal facility, the failure to relinquish it at the earliest reasonable opportunity is a voluntary act that may subject them to criminal liability. Because the State presented sufficient evidence that the defendant failed to do so here, we affirm his conviction.

## Facts and Procedural History

Viewed in the light most favorable to the verdict, the evidence presented to the jury showed the following unusual sequence of events, which began in the early morning and unfolded over the next seven hours, giving rise to Tervarus Gary's conviction.

Around 3:00 a.m., after a night of partying that included drug use, Gary woke up on the couch at a friend's house to the sound of a police officer

repeatedly saying his name. The officer tried to question him, but Gary's level of impairment made that difficult. When Gary refused to comply with the officer's commands to leave the house, the officer and his partner picked Gary up off the couch, placed him in handcuffs, and conducted a preliminary search. He was wearing two pairs of pants, including one pair that was "really loose," which made the search difficult. But an officer recovered from one of Gary's pockets a pipe used to ingest methamphetamine.

Gary was passively noncompliant as the officers took him into custody. Outside the house, he refused to walk on his own or place his legs inside the police car, so the officers had to physically assist him before transporting him to the local jail. Then, once they arrived and parked inside the jail's intake garage, Gary twice refused to exit the car. After two officers helped him out of the vehicle, four officers lifted him and carried him inside. Because of Gary's lack of cooperation, particularly "dropping his body weight like a rag doll," the officers' priority at that point was simply "to get him into a cell." So they bypassed two areas where arrestees are typically searched and instead placed Gary directly into a padded cell in the booking area.

Gary slept intermittently for the next few hours before growing increasingly agitated. Around 10:20 a.m., he checked his pockets and found "pebbles of drugs," a lighter, and a small canister of pepper spray. He then began repeatedly pressing the call box inside the cell to ask the individual operating the security-and-surveillance system why he was in jail. Based on the operator's monitoring of real-time surveillance video from inside the cell, which showed Gary holding a lighter, officers soon received a radio call that Gary "had a foreign object."

So, at 10:30 a.m., four officers arrived at the cell to investigate. They repeatedly asked an uncooperative Gary what he had, and he eventually told them he had a "starter kit" and "a knife" and showed them the pepper spray. When an officer told Gary that they needed to retrieve the items, Gary responded by demanding a phone call and a transfer to a regular cell. As he continued refusing to cooperate, the officers stepped

away to make a plan. While they did so, one of the officers heard Gary discharge pepper spray under the cell door.

The officers then returned to the cell, where a small orange stain was now visible, and instructed Gary to surrender the spray, kneel on the ground, and submit to restraints. After he refused several times, they deployed their own pepper spray into the cell. At that point—about six minutes after the officers first arrived to investigate—Gary complied and tossed the pepper spray aside. Once inside the cell, officers restrained Gary, conducted a pat-down search, and escorted him to a body scanner, which revealed he had a lighter in his pocket but no knife.

Based on these events, the State charged Gary with Level 5 felony possession of material capable of causing bodily injury by an incarcerated person under Indiana Code section 35-44.1-3-7. At trial, the State presented testimony from six witnesses and several video recordings depicting the officers' attempts to retrieve the pepper spray. Gary also testified that he didn't voluntarily bring the canister into the jail, but he acknowledged that he didn't set it on the ground to allow officers to retrieve it. Ultimately, the jury found him guilty, and the court imposed a four-year sentence.

On appeal, Gary asserted that the evidence was insufficient to show he knowingly possessed the pepper spray because he had not voluntarily brought it into the jail or received "a reasonable opportunity to purge himself" of the item. The Court of Appeals agreed and reversed his conviction. *Gary v. State*, 264 N.E.3d 690, 694 (Ind. Ct. App. 2025).

The State petitioned for transfer, which we granted, thereby vacating the Court of Appeals' opinion. Ind. Appellate Rule 58(A).

## Standard of Review

We first address the meaning and scope of the statute under which Gary was charged, which is a matter of statutory interpretation that we conduct de novo. *Calvin v. State*, 87 N.E.3d 474, 476 (Ind. 2017). We then apply that interpretation to determine whether sufficient evidence

supports his conviction. *Id.* In making that determination, we consider only the evidence favorable to his conviction and will affirm "unless 'no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt.'" *Young v. State*, 198 N.E.3d 1172, 1176 (Ind. 2022) (quoting *Jenkins v. State*, 726 N.E.2d 268, 270 (Ind. 2000)).

## Discussion and Decision

A cornerstone of our criminal justice system is that culpability requires a voluntary act, not mere status or circumstance. *See* Ind. Code § 35-41-2-1(a). And so, when the evidence places voluntariness in dispute, the State must prove beyond a reasonable doubt that the defendant acted voluntarily. *Baird v. State*, 604 N.E.2d 1170, 1176 (Ind. 1992). This issue frequently arises in cases involving crimes that require knowing or intentional possession. The offense here, for example, prohibits a person "incarcerated in a penal facility" from "knowingly or intentionally" possessing "a device, equipment, a chemical substance, or other material that . . . is used[] or . . . intended to be used[] in a manner that is readily capable of causing bodily injury." I.C. § 35-44.1-3-7. But when charged with such an offense, a defendant may assert as a defense that their possession was involuntary because they weren't aware of the possession for enough time to terminate it. I.C. § 35-41-2-1(b). These principles guide our resolution of this appeal.

Although Gary challenges the knowing-possession element of his conviction, his sole argument is that the State failed to prove he "voluntarily engaged in the conduct of possessing a dangerous device while in a penal facility." The State counters that, even if Gary didn't voluntarily bring the pepper spray into the jail, the evidence shows he voluntarily retained possession of it after having opportunities to surrender it.

We agree with the State. The statute under which Gary was charged—Indiana Code section 35-44.1-3-7—prohibits an incarcerated person from retaining possession of prohibited material inside a penal facility, even if they didn't bring it into the facility voluntarily. And because the State

presented sufficient evidence that Gary failed to relinquish the pepper spray at the earliest reasonable opportunity, we affirm his conviction.

## I. Section 35-44.1-3-7 prohibits an incarcerated person from knowingly retaining prohibited material after receiving a reasonable opportunity to relinquish it.

We begin by addressing the scope of conduct prohibited by Section 35-44.1-3-7 when an arrestee enters a penal facility with a prohibited item, perhaps unwittingly. Gary theorizes that he could be convicted only if the evidence showed he voluntarily brought the pepper spray into the jail. Though that is certainly one way to establish criminal liability, the statute is not so limited.

The plain language of Section 35-44.1-3-7 criminalizes the knowing or intentional possession, by a person incarcerated in a penal facility, of contraband that is used or intended to be used in a manner capable of causing bodily injury. Nothing in this statute limits when or how such possession begins. It instead prohibits possession at any time—whether a defendant brings a prohibited item into a penal facility or obtains it once inside. In interpreting a similar statute, our Court of Appeals adopted the majority view that "knowingly possessing an illegal substance is sufficient to prove voluntary possession of that substance in a penal facility." *Baker v. State*, 208 N.E.3d 626, 639–41 (Ind. Ct. App. 2023), *trans. denied*. The court acknowledged that "someone is not voluntarily visiting the jail after being arrested," but it also recognized that a person may voluntarily retain possession of contraband by failing to disclose or surrender it upon arrival. *Id.* at 641. The same is true here.

Yet Gary is correct in noting that "[t]he accused must be given a reasonable opportunity to purge" themselves "of the prohibited items." Indeed, when possession is an element of a crime, "it is a defense that the person who possessed the property was not aware of his possession for a time sufficient for him to have terminated his possession." I.C. § 35-41-2-1(b). So, a defendant does not violate Section 35-44.1-3-7 if they relinquish

a prohibited item at the earliest reasonable opportunity after discovering it. Denying such an opportunity would create perverse incentives. A person who discovers contraband only after entering a penal facility would be encouraged to conceal it for fear of punishment, thereby undermining the statute's goal of maintaining institutional safety. And while a correctional officer should warn arrestees upon intake about the consequences of retaining prohibited items and request disclosure of any contraband, *see Baker*, 208 N.E.3d at 641, this opportunity need not be provided at the jailhouse door. What matters is that, once an arrestee becomes aware of the contraband, they must be afforded a reasonable opportunity to surrender it without penalty. But if the arrestee declines that opportunity, continued possession becomes voluntary.

Having explained why Section 35-44.1-3-7 prohibits an incarcerated individual from retaining possession of material that can cause bodily injury once they become aware of it and receive a reasonable opportunity to relinquish it, we now turn to whether the State presented sufficient evidence to support Gary's conviction.

## II. The State presented sufficient evidence that Gary failed to relinquish the pepper spray at the earliest reasonable opportunity.

Recall that Gary asserts the State failed to prove he voluntarily brought the pepper spray into the penal facility. But, as explained above, Section 35-44.1-3-7 prohibits an incarcerated person from retaining possession of a prohibited item regardless of how it entered the facility. The question, then, is whether the State presented sufficient evidence that Gary failed to relinquish the pepper spray at the earliest reasonable opportunity. Based on our review of the evidence favorable to the verdict, we conclude that it did.

Although Gary took an initial step toward surrendering the pepper spray by alerting officers that he had it, ample evidence shows that he still failed to do so at the earliest reasonable opportunity. Officers testified that Gary attempted to use the pepper spray as a bargaining chip to obtain a

phone call or a new cell. Video evidence corroborated this account, showing Gary deflecting officers' questions and attempting to negotiate rather than surrendering the item. The footage also shows that officers warned Gary he could receive "a charge" for failing to cooperate, yet he continued to obstruct their efforts to safely retrieve the pepper spray.

Gary's own testimony further corroborated the State's evidence. He stated that an officer told him "[w]e need those items," to which he responded, "I need a phone call." He also acknowledged that he had the pepper spray "in [his] exclusive possession and control," that he "didn't set it on the ground and let the officers come in and take it," and that he "didn't let go of that bottle until [he] was maced." The jury viewed video evidence consistent with those admissions, showing that Gary didn't relinquish possession until officers deployed their own pepper spray—about six minutes after arriving at his cell. Finally, in a video recorded immediately after officers retrieved the pepper spray, Gary stated that he had succeeded in his plan to get transferred to a new cell. Taken together, this evidence shows that Gary voluntarily retained possession of the pepper spray as leverage to obtain a phone call and a new cell.

Indeed, the only factual dispute is whether Gary meant to discharge the pepper spray or accidentally set it off while trying to pass it under the door. But the evidence favorable to the verdict shows that the gap under his cell door was only "about the width of a pencil," leaving no "conceivable way" for the canister to pass through. A reasonable jury could therefore conclude that Gary wasn't attempting to turn it in.

In sum, the evidence supports the conclusion that Gary failed to relinquish the pepper spray when he was given reasonable opportunities to do so. Concluding otherwise would require us to reweigh the evidence, which we will not do.

## Conclusion

For the reasons articulated above, we affirm Gary's conviction.

Massa, Slaughter, Goff, and Molter, JJ., concur.

ATTORNEYS FOR APPELLANT
Christopher J. Petersen
Warren D. Murphy
Goshen, Indiana

ATTORNEYS FOR APPELLEE
Theodore E. Rokita
Attorney General of Indiana

Angela Sanchez
Chief Counsel, Appeals

Tyler G. Banks
Section Chief, Capital & Habeas Litigation

Megan M. Smith
Assistant Section Chief, Capital & Habeas Litigation

Daniel H. Frohman
Deputy Attorney General
Indianapolis, Indiana