

FILED

Sep 11 2017, 5:30 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Brian A. Karle
Ball Eggleston, P.C.
Lafayette, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General

Laura R. Anderson
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Shannon D. Moyer,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

September 11, 2017

Court of Appeals Case No.
79A04-1703-CR-477

Appeal from the Tippecanoe
Superior Court

The Honorable Steven P. Meyer,
Judge

Trial Court Cause Nos.
79D02-1603-F4-7
79D02-1603-F6-225

**Crone, Judge.**

# Case Summary

[1] Facing charges under three separate causes, Shannon D. Moyer pled guilty pursuant to a single plea agreement to three felony offenses and a habitual offender count. Sentencing was left to the trial court's discretion, and the trial court sentenced him to an aggregate term of twenty years. In this consolidated appeal, Moyer challenges the portion of his sentence attributable to the offenses in one of the three causes, claiming that the trial court abused its discretion in its treatment of aggravating and mitigating factors during sentencing and that his sentence is inappropriate in light of the nature of the offenses and his character. He also contends that the trial court erred in calculating his jail time credit. As a preliminary matter, we find that Indiana precedent requires our review of Moyer's entire sentence, not merely a portion of it. Concluding that the trial court neither abused its discretion nor imposed an inappropriate sentence, we affirm his twenty-year aggregate sentence. However, we remand for an adjustment to his jail time credit.

# Facts and Procedural History

[2] On November 6, 2015, Moyer accompanied Kathy Jo Adams to a discount store in Lafayette and gave her money to purchase a shotgun. On the purchase form, Adams stated that she was not acquiring the firearm for another person. After they left the store, she gave the shotgun to Moyer, who was not permitted to possess a firearm due to a 2002 class B felony conviction for dealing in a controlled substance. Adams was later convicted on charges related to the purchase of the shotgun.

[3] On November 16, 2015, Indiana Department of Natural Resource ("DNR") officers were patrolling a wooded area in Tippecanoe County and saw Moyer's truck nearby. It was deer season, and the officers looked inside the truck and observed, in plain view, various items related to hunting. Shortly thereafter, Moyer came out of the woods, and the officers approached him. Moyer admitted to walking on the property but denied hunting. Upon further investigation, the officers located a 12-gauge shotgun hidden under a pile of tree limbs and leaves within the wooded area. Appellant's App. Vol. 2 at 70, 138. Moyer denied that the shotgun belonged to him. Officers later obtained surveillance footage showing Moyer accompanying Adams to the discount store for the purchase of the firearm.

[4] In 2016, Moyer and his girlfriend ("Girlfriend") co-parented their two-year old son and Girlfriend's nine-year old daughter. One day in March 2016, Moyer was babysitting the children while he was under the influence of amphetamines and marijuana. According to Girlfriend's daughter, Moyer took the children to get ice cream and was swerving as he drove. He eventually hit a curb and some poles, and the vehicle came to a stop. He exited the vehicle and kept nodding off and falling down in the middle of the road. The young girl helped him get up and out of the roadway. She later told officers that she was "really scared" and "worried" for the two-year-old's life, so she got him out of the vehicle and knocked on doors until someone answered so that she could ask for directions home. *Id*. at 146-47. Police eventually found Moyer passed out in a wooded

area nearby and transported him to a hospital, where he tested positive for amphetamines and cannabinoids.

[5] In March 2016, the State charged Moyer in Cause 79D02-1603-F6-225 ("Cause 225") with level 6 felony neglect of a dependent, level 6 felony possession of methamphetamine, class A misdemeanor possession of a schedule IV controlled substance, class A misdemeanor possession of paraphernalia, level 6 felony operating a vehicle while intoxicated ("OWI") with a minor passenger in vehicle, class A misdemeanor OWI, class C misdemeanor OWI while having a schedule I or II controlled substance in the body, and class A misdemeanor operating a vehicle while suspended. Later that month, the State charged Moyer in Cause 79D02-1603-F4-7 ("Cause 7"), with level 4 felony unlawful possession of a firearm by a serious violent felon ("SVF") and filed a habitual offender information.

[6] In January 2017, Moyer pled guilty via open plea agreement to level 6 felony neglect of a dependent and level 6 felony OWI with a minor passenger in Cause 225 and level 4 felony SVF firearm possession in Cause 7. He admitted to being a habitual offender in Cause 7 in exchange for dismissal of all remaining charges in Cause 225 and dismissal of a third cause against him, 79D05-1603-F6-288 ("Cause 288"), which included one count of auto theft and one count of check deception, both as level 6 felonies. The trial court sentenced him in Cause 225 to concurrent terms of one year for neglect of a dependent and two years for OWI with a minor passenger. In Cause 7, the trial court imposed a ten-year sentence on the SVF count and a habitual offender enhancement of

eight years, with fourteen years executed, two years in community corrections, and two years' probation. The trial court ordered that the sentences in the two causes run consecutive to each other, for an aggregate sentence of twenty years.

[7] Moyer filed a notice of appeal in Cause 7 and a petition for belated appeal in Cause 225, which was granted. He subsequently filed a petition to consolidate the appeals, which also was granted. Additional facts will be provided as necessary.

## Discussion and Decision

## Section 1 – We must review Moyer's aggregate sentence for all offenses under the plea agreement.

[8] As a preliminary matter, we observe that Moyer appears to challenge only the portion of his sentence attributable to Cause 7, i.e., the SVF conviction with habitual offender enhancement. In *Webb v. State*, 941 N.E.2d 1082, 1087-88 (Ind. Ct. App. 2011), *trans. denied*, we held that a defendant may not limit our review of his sentence by merely challenging an individual sentence within a single order that includes multiple sentences. There, the defendant pled guilty without a plea agreement to robbery, six counts of fraud, and three additional counts in one cause, and misdemeanor OWI from a separate but consolidated cause. *Id*. at 1084-85. On appeal, he challenged only his twenty-year maximum sentence for robbery rather than his twenty-five-year aggregate sentence. *Id*. at 1085. In holding that our review could not be so limited, we relied on *Cardwell v. State*, 895 N.E.2d 1219, 1224-25 (Ind. 2008), where our

supreme court emphasized the importance of focusing our review on the aggregate sentence rather than the length of the sentence on an individual count. *Webb*, 941 N.E.2d at 1087-88.

[9] Here, the trial court issued separate sentencing orders for Causes 225 and 7 and ordered that the sentences run consecutively. Notwithstanding the separate sentencing orders, Moyer pled guilty pursuant to a single plea agreement that covered three separate causes against him. The plea agreement is captioned with all three cause numbers and articulates the convictions or dismissal of counts under each. Appellant's App. Vol. 2 at 90. Specifically, in exchange for Moyer's guilty plea to a total of three counts plus a habitual offender count, Cause 288 was dismissed in its entirety, and the remaining six counts were dismissed under Cause 225. To review his sentence only with respect to the SVF and habitual offender counts, as he suggests, would essentially amount to ignoring important aspects of the contract between the parties, such as the substantial benefit that he received in exchange for his guilty plea. The plea agreement represented a single transaction that "embodie[d] the entire agreement between the parties." *Id*. We believe that the reasoning in *Cardwell* and *Webb* extends to circumstances such as these where a defendant pleads guilty via a single plea agreement to offenses charged under separate cause numbers. We review Moyer's aggregate twenty-year sentence accordingly.

# Section 2 – The trial court acted within its discretion in its treatment of aggravating and mitigating factors during sentencing.

[10] Moyer challenges the trial court's treatment of aggravating and mitigating factors during sentencing. Sentencing decisions rest within the sound discretion of the trial court, and as long as a sentence is within the statutory range, it is subject to review only for an abuse of discretion. *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218. An abuse of discretion occurs where the trial court's decision is clearly against the logic and effect of the facts and circumstances before it, or the reasonable, probable, and actual deductions to be drawn therefrom. *Sloan v. State*, 16 N.E.3d 1018, 1026 (Ind. Ct. App. 2014).

[11] One of the ways in which a trial court may abuse its discretion in sentencing is by relying on reasons that are improper as a matter of law. *Anglemyer*, 868 N.E.2d at 490-91. "Under those circumstances, remand for resentencing may be the appropriate remedy if we cannot say with confidence that the trial court would have imposed the same sentence had it properly considered reasons that enjoy support in the record." *Id*. at 491. When a trial court improperly applies an aggravator but other valid aggravating circumstances exist, a sentence may still be upheld. *Baumholser v. State*, 62 N.E.3d 411, 417 (Ind. Ct. App. 2016), *trans. denied* (2017).

[12] Moyer asserts that the trial court relied on an aggravator that is improper as a matter of law. He bases this argument on the trial court's statement that it

considered as an aggravator the probation department's determination that he was "at a high risk to reoffend." Tr. Vol. 2 at 64. *See also* Appellant's App. Vol. 2 at 129 (probation department's risk assessment showing him to be in "HIGH risk category to reoffend."). Our supreme court has held that "offender recidivism risk assessment instruments do not function as aggravating or mitigating circumstances for the purpose of determining the length of sentence appropriate for each defendant." *J.S. v. State*, 928 N.E.2d 576, 578 (Ind. 2010). Nevertheless, the *J.S.* court explained that risk assessment scores are "appropriate supplemental consideration in judicial sentencing proceedings." *Id*. (citing *Malenchik v. State*, 928 N.E.2d 564, 573 (Ind. 2010)).

[13] Based on our review of the record, we believe that the trial court's comments about Moyer's risk assessment scores were supplemental to the factors articulated in its written sentencing orders. In those orders, the trial court identified as aggravating factors Moyer's criminal history, the repeat nature of his offenses, his history of probation violations and revocations, his violation of pretrial release, the seriousness of his offenses, and his attempts to minimize his role in the SVF count. Appellant's App. Vol. 2 at 97, 104. The court identified as mitigating factors his guilty plea (though diminished by his receipt of benefits under the plea agreement), his expressions of remorse, his good employment history, and his substance abuse issues (though diminished by his failure to take advantage of treatment opportunities). *Id*. at 98, 104. If the trial court had intended to identify Moyer's risk assessment score as an aggravator, it would have listed it as such in the written orders. We believe that, read in context, the

court's oral comments were merely supplemental to the aggravating factors of Moyer's extensive criminal history and numerous probation failures. Even if the trial court improperly considered the risk assessment, we are confident, based on the quantity and gravity of the other aggravating factors, that the trial court would have imposed the same sentence without it.

[14] Finally, to the extent that Moyer appears to argue that the trial court placed too much emphasis on factors such as his criminal record and too little emphasis on his guilty plea, employment history, and family circumstances, we remind him that such considerations are unavailable for appellate review. *See Anglemyer*, 868 N.E.2d at 491 ("The relative weight or value assignable to reasons properly found or those which should have been found is not subject to review for abuse [of discretion]."). Moyer has failed to establish an abuse of discretion.

## Section 3 – Moyer has failed to meet his burden of establishing that his sentence is inappropriate in light of the nature of the offenses and his character.

[15] Moyer also asks that we review and revise his sentence pursuant to Appellate Rule 7(B), which states that we "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, [this] Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." When a defendant requests appellate review and revision of his sentence, we have the power to affirm or reduce the sentence. *Akard v. State*, 937 N.E.2d 811, 813 (Ind. 2010). In conducting our review, we may consider all aspects of the penal consequences imposed by the trial court in sentencing,

i.e., whether it consists of executed time, probation, suspension, home detention, or placement in community corrections, and whether the sentences run concurrently or consecutively. *Davidson v. State*, 926 N.E.2d 1023, 1025 (Ind. 2010). We do not look to see whether the defendant's sentence is appropriate or if another sentence might be *more* appropriate; rather, the test is whether the sentence is "inappropriate." *Fonner v. State*, 876 N.E.2d 340, 344 (Ind. Ct. App. 2007). A defendant bears the burden of persuading this Court that his sentence meets the inappropriateness standard. *Anglemyer*, 868 N.E.2d at 490.

[16] In considering the nature of Moyer's offenses, "the advisory sentence is the starting point the Legislature has selected as an appropriate sentence." *Id.* at 494. When determining the appropriateness of a sentence that deviates from an advisory sentence, we consider whether there is anything more or less egregious about the offense as committed by the defendant that "makes it different from the typical offense accounted for by the legislature when it set the advisory sentence." *Holloway v. State*, 950 N.E.2d 803, 807 (Ind. Ct. App. 2011).

[17] To the extent that Moyer confines his appropriateness challenge to the eighteen-year portion of his sentence attributable to Cause 7, we reiterate that he cannot confine our review to a portion of his aggregate sentence. *See Webb*, 941 N.E.2d at 1087-88. Moyer's aggregate twenty-year sentence comprises concurrent one- and two-year terms for his two level 6 felony convictions; a ten-year term for his level 4 felony SVF conviction, with an additional eight years for the habitual offender finding, with fourteen of the eighteen years executed, two years in

community corrections, and two years suspended; and with the eighteen years to run consecutive to the two-year term for the level 6 felonies. A level 6 felony carries a sentencing range of six months to two and one-half years, with an advisory term of one year. Ind. Code § 35-50-2-7(b). The sentencing range for a level 4 felony is two to twelve years, with an advisory term of six years. Ind. Code § 35-50-2-5.5. For a person convicted of murder or a level 1 through level 4 felony and found to be a habitual offender, the trial court shall impose an additional fixed, nonsuspendible term between six and twenty years. Ind. Code § 35-50-2-8(i)(1).

[18] The circumstances surrounding Moyer's neglect and OWI offenses are troubling. First, he was under the influence of amphetamines and marijuana while babysitting his two-year-old son and Girlfriend's nine-year-old daughter. He drove the children on an excursion for ice cream, weaving and eventually crashing his vehicle. After that, he did not attend to the children, but instead exited the vehicle, fell down in the street, and was later found unconscious in the woods nearby. He essentially left the children to fend for themselves, and they had to knock on the doors of strangers for help.

[19] With respect to Moyer's level 4 felony SVF and habitual offender counts, we note that although his sentence exceeds the level 4 felony advisory term by four years, his habitual offender enhancement, only two years above the mandatory minimum fixed additional term, suggests leniency. Moyer correctly asserts that his SVF offense was not particularly egregious in scope or duration. He unlawfully possessed a shotgun that he was using to hunt deer, not to commit a

violent crime. However, our analysis cannot end there. Moyer acquired the shotgun through deceptive means, enlisting a straw purchaser whom he induced to make false statements on the firearm purchase form, thereby subjecting her to prosecution. Moreover, his argument concerning the short duration of his unlawful possession, ten days, is not particularly persuasive, as it was the DNR officers' seizure of the shotgun that precipitated his loss of possession of it. His conduct in hiding the shotgun beneath leaves and branches and lying to DNR officers that the shotgun was not his demonstrates his intent to conceal the shotgun and maintain unlawful possession of it. These circumstances speak not only to the nature of Moyer's offenses but also to his character.

[20] We conduct our review of a defendant's character by engaging in a broad consideration of his qualities. *Aslinger v. State*, 2 N.E.3d 84, 95 (Ind. Ct. App. 2014), *clarified on other grounds on reh'g*, 11 N.E.3d 571. Moyer admits that his criminal record reflects poorly on his character but asks that we consider that his ten felony and eight misdemeanor convictions are, by and large, "low-level" offenses and mostly related to his substance abuse issues. Appellant's Br. at 15. However, his criminal history, beginning at age fifteen, includes not only a plethora of drug charges and convictions, but also convictions for OWI, resisting law enforcement, property offenses, and battery resulting in bodily injury. In reviewing his record, we find that the only significant timeframes in which he was not facing criminal charges are those when he was incarcerated. In other words, Moyer is a career criminal. He has had ten probation

revocations filed against him, four of which resulted in revocation and several others that were disposed of by plea agreements. In short, prior attempts at leniency simply have not worked.

[21] Moyer characterizes himself as a good father with a strong employment record, who should be granted leniency due to the hardship of his incarceration on his family. Although we appreciate his desire to work and provide for his family, we note that any incarceration is likely to produce some hardship for the family. When it comes to Moyer's claims of good parenting, his conduct while babysitting his toddler son and Girlfriend's nine-year-old child simply cannot be ignored. He compounded one poor decision, taking amphetamines and marijuana, with other poor decisions such as driving the children while under the influence of those drugs and, after crashing his vehicle, leaving the children in a precarious situation in which the nine-year-old had to assume the role of caretaker for the two-year-old. We also note, as did the trial court, that Moyer has not availed himself of opportunities for substance abuse treatment, which could have helped him become a more responsible father. Moyer's employment history is not as solid as he portrays it to be. Although he has experienced brief stints of success in a few jobs, he has failed to maintain long-term success in the workplace, due largely to his substance abuse and criminal activity resulting in incarceration. In sum, Moyer has failed to meet his burden of establishing that his twenty-year aggregate sentence is inappropriate in light of the nature of his offenses and his character. Therefore, we affirm it.

## Section 4 – The trial court miscalculated Moyer's credit time in Cause 225.

[22] Finally, Moyer asserts, and the State concedes, that he is entitled to two additional days of jail time credit in Cause 225. Presentence jail time credit is a matter of statutory right, not subject to judicial discretion. *Hall v. State*, 944 N.E.2d 538, 542 (Ind. Ct. App. 2011), *trans. denied*. Here, the parties relied on the "actual jail days" as 188 days, per the presentence investigation report ("PSI"). Appellant's App. Vol. 2 at 117. However, this calculation presupposed a sentencing date of February 8, 2017, when in fact, after the PSI was prepared, Moyer's sentencing hearing was rescheduled and held on February 10, 2017. This means that Moyer was confined for two additional days for which he did not receive credit. As such, we remand with instructions to adjust Moyer's jail time credit accordingly.

[23] Affirmed and remanded.

Vaidik, C.J., and Mathias, J., concur.