## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jun 05 2019, 9:52 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Bryan M. Truitt
Valparaiso, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Samantha M. Sumcad
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Michael J. Lepka,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

June 5, 2019

Court of Appeals Case No.
18A-CR-2399

Appeal from the Porter Superior Court

The Honorable Jeffrey W. Clymer, Judge

Trial Court Cause No.
64D02-1806-F5-5750

**Shepard, Senior Judge.**

[1] Michael J. Lepka was found guilty of two counts of battery. He appeals the trial court's aggregate sentence of five years with two and one half suspended as inappropriate. We affirm.

[2] Lepka and Lisa Fernandez dated for fifteen years and had a brief marriage before divorcing in 2010. Lepka and Fernandez have three children: one, fifteen years of age; and twins, age twelve. On June 17, 2018, Lepka took his twin sons M.L. and J.L. to the park. At the park, M.L. played on a zipline. When he was done, he released the handle and it accidentally struck Lepka in the head. Lepka became upset and tersely called M.L. over to him. He struck M.L. in the head twice with a closed fist—one of which hit M.L.'s eye, causing injury. Lepka then shoved M.L. into the ground.

[3] The State charged Lepka with battery resulting in bodily injury to a person less than fourteen years old, a Level 5 felony; and battery, a Class A misdemeanor. The court found Lepka guilty on both counts following a bench trial. At a later sentencing hearing, it found aggravating and mitigating circumstances.

[4] The trial court found Lepka's continued denial of events when it "found those things happened" as an aggravating circumstance. Tr. Vol. V, p. 6. It also found as an aggravator Lepka's history of repeated criminal conduct as described in the presentence investigation report; as well as Lepka's relationship to M.L., including the child's age. *Id.* at 5. The court found Lepka's continued respect for and calmness in front of the court and law enforcement officials as

mitigating. The court also determined that M.L.'s injuries were a mitigating factor because they were minor despite qualifying as bodily injury.

Lepka stated to the court he wanted to avoid prison; but if he went, he was "hoping maybe if, in a snowball [sic] chance, you could mandate me to therapeutic." *Id.* at 3. We take that to mean Lepka requested to be placed under the "Purposeful Incarceration" program (P.I.).[1] "Therapeutic Communities" (T.C.) are a specialized form of P.I. which provide intensive substance abuse treatment and rehabilitation.[2] It appears from the record the trial court did not consider Lepka's eligibility for P.I, though stating it did "believe in [Lepka]," and that he needs treatment. *Id.* at 6.

Lepka testified he has been enrolled in and completed various programs to affect his behavior positively. He admitted to struggling with substance abuse, including marijuana and alcohol. He also admitted he struggled to change his

---

[1] "In 2009 the Indiana Department of Correction (IDOC) began a cooperative project with Indiana Court Systems called Purposeful Incarceration (P.I.). The Department works in collaboration with Judges who can sentence chemically addicted offenders and document that they will 'consider a sentence modification' should the offender successfully complete an IDOC Therapeutic community. This supports the Department and [sic] Correction and the Judiciary to get addicted offenders the treatment that they need and work collaboratively to support their successful re-entry into society." Indiana Department of Correction, *Purposeful Incarceration*, https://www.in.gov/idoc/2798.htm (visited May 29, 2019).

[2] "Therapeutic Communities provide intensive substance abuse treatment and the core program is a minimum of eight (8) months in length. The TC's are competency based, and some offenders may take up to a year to complete the core program. Upon successful completion participants are eligible for up to a 6 month credit time cut." Indiana Department of Correction, *Purposeful Incarceration*, https://www.in.gov/idoc/2798.htm (visited May 29, 2019).

ways after a "lifetime of not caring," and he "[needs] to get [his] thinking correct." *Id.* at 4. Lepka testified he wants to be a good father.

[7] The trial court recognized Lepka had "hope." *Id.* at 6. The court, however, described Lepka as in "a carat [sic] and stick" scenario. *Id.* It noted its belief in Lepka's motivation but did not believe he was currently in a place to achieve his desired end. The court explained concern that there may be harm to the children in the future and that Lepka's criminal past was too extensive to warrant repeated leniency.[3]

[8] The trial court sentenced Lepka to five years, with two and a half years suspended on the first count and 180 days, to be served concurrently, on the second count. This appeal followed.

[9] Lepka first argues the sentence was inappropriate as it was too close to the maximum possible sentence. Appellate courts may revise a sentence if it is inappropriate in light of the nature of the offense and the character of the offender. Indiana Appellate Rule 7(B). When reviewing sentences, we are focused on the forest—the aggregate sentence—rather than the trees. *Cardwell v. State*, 895 N.E.2d 1219 (Ind. 2008). The principle role of our review is to leaven

---

[3] The record reflects Lepka accrued numerous convictions as an adult, including felony convictions for: Burglary, Theft, Battery, Receiving Stolen Property, Domestic Battery, Intimidation with a Deadly Weapon, and Battery on a Person Less Than Fourteen Years Old; and misdemeanor convictions for: Curfew, Disorderly Conduct, Theft, and Battery. Lepka has also violated supervisory sentences on six-of-seven occasions as an adult. Appellant's App. Vol. III, pp. 6-10.

the outliers, in recognition that there is no one "correct" result in any given case. *Id.* at 1225.

[10] The sentencing range for a Level 5 felony is one to six years' incarceration, with an advisory sentence of three years, and a fine of up to $10,000. Ind. Code § 35-50-2-6 (2014). Likewise, the sentencing range for a Class A misdemeanor shall be incarceration for a term no longer than one year, and a fine of up to $5,000. Ind. Code 35-50-3-2 (1977). Lepka bears the burden of persuading us that his five-year sentence is inappropriate. *Moyer v. State*, 83 N.E.3d 136 (Ind. Ct. App. 2017), *trans. denied*.

[11] The nature of his offenses was patently violent. Lepka committed an act of violence against his own child—and not for the first time. This particular act is a respectable aggravator on its own, but it also is a symptom of Lepka's poor character.[4] Lepka was previously convicted for battery against a person less than fourteen years old where M.L.'s brother, J.L., was the victim. The State's characterization of Lepka's past as "riddled" with domestic violence may be hyperbolic. Appellee's Br. p. 8. It is no exaggeration, however, to describe his

---

[4] Ind. Code § 35-38-1-7.1(a) (2015) provides:

(4) The person:

    (A) committed a crime of violence (citation omitted); and

    (B) knowingly committed the offense in the presence or within hearing of an individual who:

    (i) was less than eighteen (18) years of age at the time the person committed the offense; and

    (ii) is not the victim of the offense.

* * * * *

(8) The person was in a position having care, custody, or control of the victim of the offense.

history as riddled with criminal activity—where physical violence plays no small part.

[12] The trial court noted even though Lepka had admitted he needed to change his attitude and that he had completed some behavioral programming; it thought his character justified his sentence. Continuing the court's analogy, its concern of "harm to the child in the future" and Lepka's past conduct made a "stick" too long for him to obtain whatever "carrot" he is reaching for. Tr. Vol. V, p. 6. To get to that "carrot"—the point where Lepka is a good father and reformed citizen—the trial court readily explained that Lepka needed rehabilitation in a penal facility.

[13] The trial court took the sincerity of Lepka's position into account when it stated at sentencing that it "believe[s]" in him and wants him "to get treatment." *Id.* It explained if it didn't believe in him it would not have suspended as much of the sentence as it did. The court satisfactorily considered the many factors relative to this case when sentencing Lepka to five years, which is still less than the statutory maximum. *See, e.g., Coleman v. State*, 952 N.E.2d 377 (Ind. Ct. App. 2011) (holding that the statutory maximum sentence was appropriate in light of the offender's character, using factors such as: expressions of remorse or culpability, prior criminal history, prior probation violations and substance abuse), *trans. denied*; *see also Sanders v. State*, 71 N.E.3d 839, 844 (Ind. Ct. App. 2017) ("When considering the character of the offender . . . [t]he significance of criminal history varies based on the gravity, nature, and number of prior offenses in relation to the current offense.") (citations omitted), *trans. denied*.

We conclude that the five-year sentence was not inappropriate given the nature of the offenses and character of the offender.

[14]   Next, Lepka argues the trial court should have ordered Therapeutic Communities placement at the IDOC.  There is no one law that deals with placing an offender in P.I.  According to the IDOC:

> The courts communicate with the IDOC that [an] offender is a PI offender.  After entering the IDOC the offender will be placed at an appropriate facility that has a TC.  If possible the individual will be placed in a TC close to their County of sentencing. . . . Once the offender is placed at the facility[,] they will be assessed by the Substance Abuse staff.  If they meet the substance abuse admission criteria[,] they will be offered the opportunity to enter the program.[5]

While the trial court acknowledged numerous times that Lepka needed treatment, the discussion of such treatment revolved around behavior.  The record shows alcohol and marijuana use were present in Lepka's life, but the trial court did not feel the need to address it as an acute issue.  Instead the court focused on Lepka's relationship and past with his family, explaining to Lepka, "the problems that [you have concern] your wife and kids," and that if the court "felt society was in danger from you [ ], your sentence would be different." Tr. Vol. V, p. 7.

---

[5] Indiana Department of Correction, *Purposeful Incarceration*, available at https://www.in.gov/idoc/2798.htm (visited May 29, 2019).

[15] Our review is not concerned with whether an alternative sentence might be more appropriate; but rather whether the sentence imposed is inappropriate. *Moyer*, 83 N.E.3d at 142. While Lepka might well benefit from P.I., the question is not what the trial court could have reasonably done. Rather, it is whether not being placed in P.I. renders Lepka's sentence inappropriate. There is ample reason, discussed above, to find his sentence was appropriate.

[16] For the foregoing reasons, we affirm the judgment of the trial court.

Vaidik, C.J., and May, J., concur.