## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jan 22 2020, 5:55 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Kyle K. Dugger
Monroe County Public Defender
Bloomington, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

J.T. Whitehead
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Curtis Gene Palmer,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | January 22, 2020<br><br>Court of Appeals Case No.<br>19A-CR-1702<br><br>Appeal from the<br>Monroe Circuit Court<br><br>The Honorable<br>Mary Ellen Diekhoff, Judge<br><br>Trial Court Cause No.<br>53C05-1401-FC-40 |

**Kirsch, Judge.**

Curtis Gene Palmer ("Palmer") pleaded guilty to three counts of theft,[1] each as a Class D felony, and admitted to being a habitual offender.[2] At the time, Palmer entered into a restitution agreement by which he would pay his victim restitution instead of being immediately sentenced. Palmer later failed to meet his restitution obligation, and the trial court sentenced him to 910 days for each of his Class D felony theft convictions, to be served consecutively, and 1,635 days for being a habitual offender for an aggregate sentence of twelve years. Palmer appeals his sentence and raises the following restated issues:

I. Whether his sentence is inappropriate in light of the nature of the offense and the character of the offender; and

II. Whether the trial court abused its discretion when it sentenced Palmer by erroneously stating that he did not have the right to appeal his sentence.

We affirm.

## Fact and Procedural History

In early 2013, Palmer encountered Scott Mundell ("Mundell"), whom he had known since the two were teenagers in the same youth group at church. *Tr. Vol. 2* at 8-9. When the two reconnected in 2013, Mundell was a homebuilder, and his business had been suffering since 2008. *Id.* at 9. Palmer informed

---

[1] *See* Ind. Code § 35-43-4-2. Palmer committed his crimes in 2013 and was therefore charged and convicted under the statute that was applicable at that time.

[2] *See* Ind. Code § 35-50-2-8.

Mundell that he had been making large amounts of money on investments in short amounts of time on behalf of a small list of clients that included Larry Bird. *Appellant's Conf. App. Vol. II* at 29. Mundell became involved in financial transactions with Palmer, with the belief that Palmer would invest the money Mundell gave to him. *Id.*

[4] In February 2013, Mundell made an initial transfer in the amount of $40,000 to Palmer, and in March 2013, he transferred $55,000. *Id.* Mundell transferred $6,000 in June 2013 for alleged accounting fees, and in August 2013, he transferred another $12,000, for a total transfer to Palmer of $113,000. *Id.* The funds that Mundell transferred comprised virtually all of Mundell's assets, including his savings and his retirement accounts. *Tr. Vol. 2* at 10. In October 2013, Mundell realized that he had been cheated by Palmer, and he contacted law enforcement, beginning with the FBI, who then directed him to the Indiana State Police. *Appellant's Conf. App. Vol. II* at 29.

[5] Indiana State Police Trooper Jan Kruse ("Trooper Kruse") met with Mundell and interviewed him and his wife about the alleged investments. *Id.* Trooper Kruse was unable to contact Palmer in person but did speak with him by phone and was able to obtain banking records for Palmer's accounts, which showed transfers from Mundell's accounts totaling $113,000. *Id.* Instead of being invested, it appeared that the money transferred by Mundell was used to pay off credit card debt, for vacation expenses, and to purchase luxury items. *Id.*

[6]     On January 15, 2014, the State charged Palmer with one count of theft as a Class C felony. *Appellant's App. Vol. II* at 15. On January 20, 2015, the State filed a "Motion for Order and Entry on Restitution," stating that the parties had reached a plea agreement. *Id*. at 19. On February 17, 2015, the State filed a Notice of Intent to Seek Habitual Offender Status, and on March 31, 2015, the State amended the charging information and charged Palmer with three counts of Class D felony theft. *Id*. at 22, 38. On March 31, 2015, Palmer pleaded guilty to three counts of Class D felony theft and admitted to being a habitual offender. *Id*. at 5; *Tr. Vol. 2* at 5-6. Pursuant to the plea agreement, Palmer was required to pay restitution to Mundell in the amount of $2,500 each month until the total amount of $113,000 was paid in full. *Appellant's App. Vol. II* at 5, 40. Failure to complete the payments would result in Palmer being remanded into the custody of the Monroe County Sheriff. *Id*. Palmer also agreed that he would be on supervised probation during periods of unemployment. *Id*. at 40. The trial court signed the amended restitution agreement and order. *Id*. at 5.

[7]     The case was set for change of plea hearing on June 3, 2015, but if payments were made, Palmer was not required to appear, and the case would be reset each month. *Id*. Such hearings were held on June 3, 2015, July 1, 2015, August 26, 2015, September 23, 2015, and October 21, 2015; at each of those hearings, it was found that Palmer had made payment as directed and was not required to appear. *Id*. at 5-6. At the November 18, 2015 change of plea hearing, the case was set for review on November 25, 2018, but that hearing was vacated despite payment not being timely made by Palmer and was

rescheduled for December 16, 2015. *Id*. at 6. The trial court ordered that it would not entertain further late payments. *Id*. At the December 16, 2015 hearing, the trial court granted a temporary modification of the payment arrangement at Palmer's request, reducing the monthly amount due to $1,500, beginning December 28, 2015, and continuing through the 28th of January, February, and March, at which time payment arrangements would be revisited. *Id*.

[8]    At the hearings held on December 30, 2015 and January 28, 2016, Palmer had made the required payments; the February hearing was reset for March 24, 2016, and, at the March 24 hearing, the trial court ordered Palmer to make payments of $2,000 a month for the next three months and scheduled the next hearing for May 5, 2016. *Id*. Palmer made payments as ordered through August 30, 2016, and he was ordered to appear for the next change of plea hearing set for September 27, 2016. *Id*. at 7. Palmer failed to appear for the September hearing, and a warrant was issued for his arrest. *Id*. The trial court ordered that if Palmer was able to pay $4,000 past due, he would be released on his own recognizance. *Id*. The trial court also granted Palmer's motion to reset the sentencing hearing for November 17, 2016 and ordered him to appear and that if he met the requirements, he would be returned to the original terms of the restitution agreement, requiring him to make payments of $2,500 per month. *Id*.

[9]    On October 26, 2016, the trial court was informed that Palmer had made the required payments and released him on his own recognizance without the

requirement of posting bail. *Id*. at 7-8. On November 17, 2016, the trial court ordered Palmer to return to the original terms of payments of $2,500 per month in restitution. *Id*. at 8. Palmer was again not required to appear at the scheduled monthly hearings if he made the payments. *Id*. Palmer stopped making payments in November 2017 and failed to appear at his sentencing hearing set for December 14, 2017. *Id*. at 10; *Tr. Vol. 2* at 6-7. The trial court issued a warrant, and the warrant was served February 13, 2019. *Appellant's App. Vol. II* at 10; *Tr. Vol. 2* at 7. On March 11, 2019, the State filed a motion requesting a sentencing hearing, and that motion was granted. *Appellant's App. Vol. II* at 10.

[10] The sentencing hearing was held on June 24, 2019, and the trial court sentenced Palmer to 910 days for each of his three Class D felony theft convictions, to be served consecutively, and enhanced by 1,635 days for being a habitual offender, for an aggregate sentence of twelve years. *Appellant's App. Vol. II* at 45, 48-49. At sentencing, the trial court informed Palmer that he had the right to consult an attorney and file an appeal. *Tr. Vol. 2* at 37-38. Palmer now appeals.

## Discussion and Decision

## I. Inappropriate Sentence

[11] Palmer argues that his sentence is inappropriate. Pursuant to Indiana Appellate Rule 7(B), this court "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the [c]ourt finds that the sentence is inappropriate in light of the nature of the offense and the character of the

offender." Our Supreme Court has explained that the principal role of appellate review should be to attempt to leaven the outliers, "not to achieve a perceived 'correct' result in each case." *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008). We independently examine the nature of Palmer's offense and his character under Appellate Rule 7(B) with substantial deference to the trial court's sentence. *Satterfield v. State*, 33 N.E.3d 344, 355 (Ind. 2015). "In conducting our review, we do not look to see whether the defendant's sentence is appropriate or if another sentence might be more appropriate; rather, the test is whether the sentence is 'inappropriate.'" *Barker v. State*, 994 N.E.2d 306, 315 (Ind. Ct. App. 2013), *trans. denied*. Whether a sentence is inappropriate ultimately depends upon "the culpability of the defendant, the severity of the crime, the damage done to others, and a myriad of other factors that come to light in a given case." *Cardwell*, 895 N.E.2d at 1224. Palmer bears the burden of persuading us that his sentence is inappropriate. *Id*.

[12] Palmer argues that his twelve-year-sentence is inappropriate in light of the nature of the offense and his character. Specifically, he contends that, as to the nature of the offense, his crimes were monetary-based and nonviolent, and the offenses had been significantly mitigated by his payment of over half of the restitution, which he would no longer be able to repay if incarcerated for such a substantial amount of time. As to his character, Palmer asserts that he has a nonviolent criminal history, no history of drug or alcohol abuse, and family who rely on him for support. He further maintains that he has demonstrated through his past payment of a substantial amount of his restitution that he has a

heightened earning capacity and an ability to find lawful work in order to achieve the goal of repaying his debt.

[13] Here, Palmer pleaded guilty to three counts of Class D felony theft and admitted to being a habitual offender. The sentencing statute for Class D felonies provides that "[a] person who commits a Class D felony shall be imprisoned for a fixed term of between six (6) months and three (3) years, with the advisory sentence being one and one-half (1½ ) years." Ind. Code § 35-50-2-7.[3] The trial court shall "sentence a person found to be a habitual offender to an additional fixed term that is not less than the advisory sentence for the underlying offense nor more than three (3) times the advisory sentence for the underlying offense." Ind. Code § 35-50-2-8. The trial court imposed a sentence of 910 days, or two and a half years, for each Class D felony theft conviction. *Appellant's App. Vol. II* at 45, 48-49. The trial court imposed 1,635 days, or four and a half years, for Palmer's habitual offender status, which is three times the advisory sentence for a Class D felony conviction. *Id.*

[14] As this court has recognized, the nature of the offense is found in the details and circumstances of the commission of the offense and the defendant's participation. *Perry v. State*, 78 N.E.3d 1, 13 (Ind. Ct. App. 2017). "When determining the appropriateness of a sentence that deviates from an advisory sentence, we consider whether there is anything more or less egregious about

---

[3] Because Palmer committed his crimes in 2013, we apply the sentencing statutes that were applicable at that time.

the offense as committed by the defendant that 'makes it different from the typical offense accounted for by the legislature when it set the advisory sentence.'" *Moyer v. State*, 83 N.E.3d 136, 142 (Ind. Ct. App. 2017) (quoting *Holloway v. State*, 950 N.E.2d 803, 807 (Ind. Ct. App. 2011)), *trans. denied*. In the present case, Palmer defrauded Mundell of more than one hundred thousand dollars over a period of several months in 2013, knowing that Mundell believed that he was transferring money to Palmer to invest on Mundell's behalf. These multiple transfers included an initial transfer of $40,000, a $55,000 transfer, a $6,000 transfer in June, and finally, a transfer of $12,000, for a total transfer to Palmer of $113,000. *Appellant's Conf. App. Vol. II* at 29. The funds that Mundell transferred to Palmer encompassed virtually all of Mundell's assets, including his savings and his retirement accounts. *Tr. Vol. 2* at 10. Therefore, the impact of Palmer's crimes on Mundell was extreme. Further, although Palmer did not hold a traditional position of trust with Mundell, he was a childhood friend that Mundell had initially met through a church youth group and a person Mundell believed he could trust to invest his money. Despite the fact that Palmer did repay approximately $59,000 of the money he stole from Mundell, Palmer eventually stopped making payments and was not able to fulfill his restitution agreement to pay back the $113,000 he owed Mundell. Palmer has not shown that his sentence is inappropriate in light of the nature of the offense.

[15] The character of the offender is found in what we learn of the offender's life and conduct. *Perry*, 78 N.E.3d at 13. When considering the character of the

offender, one relevant fact is the defendant's criminal history. *Johnson v. State*, 986 N.E.2d 852, 857 (Ind. Ct. App. 2013). The evidence showed that Palmer had an extensive criminal record, which extended over twenty-five years and was comprised of misdemeanor and felony convictions, all involving crimes of deception and theft. Beginning in 1992, Palmer was convicted of Class A misdemeanor check deception and Class C felony fraud on a financial institution. *Appellant's Conf. App. Vol. II* at 26. In 1995, he was again convicted of Class A misdemeanor check deception, and in 1997, he pleaded guilty to two counts of Class D felony theft. *Id*. at 27. In 2006, he was convicted of Class C felony forgery, and in 2007, he pleaded guilty to Class D felony theft and two counts of Class D felony check fraud. *Id*. at 28. Therefore, Palmer's significant criminal history showed that he has repeatedly committed crimes involving deceit and theft and has not been deterred from committing further offenses through prior placement on probation, on community supervision, or in incarceration. We, therefore, conclude that Palmer has not shown that his sentence is inappropriate in light of the nature of the offense and his character.

## II. Ability to Appeal Sentence

Palmer argues that the trial court abused its discretion in sentencing him because the trial court stated that he was unable to appeal his sentence due to his plea agreement. At sentencing, the trial court initially stated it did not believe that Palmer was able to appeal his sentence because he pleaded guilty pursuant to a negotiated plea agreement, which presumably contained a provision waiving his right to an appeal, and that the terms of the plea

agreement were explained to him at the time he pleaded guilty. *Tr. Vol. 2* at 37. The record on appeal does not contain a copy of the negotiated plea agreement, making it impossible to determine what the terms of the plea agreement stated. However, it is not necessary to do so because the trial court went on to inform Palmer, "if you believe that you somehow were sentenced unconstitutionally or in violation of the plea agreement you have a right to consult with the attorney and file an appeal." *Id*. The trial court's second statement informed Palmer that he had the right to appeal his sentence. Further, we find Palmer's claim to be moot since under the first section of this opinion, Palmer exercised his right to appeal his sentence, and we have rendered a determination as to whether that sentence is inappropriate. *See Hamed v. State*, 852 N.E.2d 619, 621 (Ind. Ct. App. 2006) ("The long-standing rule in Indiana courts has been that a case is deemed moot when no effective relief can be rendered to the parties before the court.").[4]

Affirmed.

Bailey, J., and Mathias, J., concur.

---

[4] Palmer additionally argues that the trial court abused its discretion when, in response to defense counsel's question as to what the total sentence was, it stated "[o]ne thousand, nine hundred and eighty days." *Tr. Vol. 2* at 38. Although the trial court made this statement, earlier in the sentencing hearing, the trial court had correctly stated the sentence, and the written sentencing statement and abstract of judgment likewise contained the correct sentence. *See id*. at 35; *Appellant's App. Vol. II* at 45, 48-49. We do not believe that Palmer's claimed misstatement of his sentence caused any confusion as to the length of his sentence when it had been accurately pronounced both in the oral and written sentencing statements.