## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D),
this Memorandum Decision shall not be
regarded as precedent or cited before any
court except for the purpose of establishing
the defense of res judicata, collateral
estoppel, or the law of the case.



FILED

Jan 31 2020, 6:18 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

R. Patrick Magrath
Alcorn Sage Schwartz & Magrath, LLP
Madison, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Zachary R. Griffin
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Robert L. Moore,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff,*

January 31, 2020

Court of Appeals Case No.
18A-CR-2870

Appeal from the Dearborn
Superior Court

The Honorable Jonathan N.
Cleary, Judge

Trial Court Cause No.
15D01-1605-F4-26

**Robb, Judge.**

# Case Summary and Issue

[1] Following a bench trial, Robert Moore was convicted of dealing in a narcotic drug, a Level 5 felony, and the trial court sentenced him to serve six years in the Indiana Department of Correction ("DOC"). Moore appeals his sentence, presenting the sole issue of whether his six-year sentence is inappropriate in light of his character and the nature of the offense. Concluding Moore's sentence is not inappropriate, we affirm.

# Facts and Procedural History

[2] The underlying facts are as follows:

> On May 13, 2016, Trevor Adkins ("Adkins") was arrested on an outstanding warrant for possession of heroin in Dearborn County, Indiana. Adkins volunteered to contact drug dealers he had purchased from in the past to assist police officers who conduct controlled drug buys.

> Later that same day, Adkins voluntarily contacted a heroin dealer who was later identified as Kevin Sanders ("Sanders"). The Greendale Police Department orchestrated the logistics of the controlled buy, and Adkins relayed that information to Sanders. Adkins and Sanders agreed to meet at Party at Trav's Fireworks ("Trav's").

> Officer Dustin Hatfield ("Officer Hatfield") drove Adkins to Trav's in his personal vehicle, a blue Ford F–150 ("Ford"). . . .

> Upon arriving at Trav's, the officer transporting Adkins requested that the meet-up location be changed due to officer

safety because it was dark, the lighting [at Trav's] was poor[.] Adkins asked Sanders to meet him at Ameristop's parking lot, which shared a parking lot with Trav's but had better lighting. Sanders called A[d]kins on the way to Ameristop and informed Adkins that he was lost and needed to stop and get gas. Adkins agreed to meet Sanders at a Shell Gas Station which was approximately two-tenths of a mile from the Ameristop. Sanders told Adkins to look for a white Camaro.

Officer Hatfield observed only one white [Camaro] in the parking lot[,] and he parked his truck directly in front of the Camaro. He was able to see the driver and passenger in the Camaro, and Adkins identified the passenger as Sanders. Before Adkins exited the Ford, he and Officer Hatfield watched Sanders climb into the back seat of the Camaro. Adkins then approached the Camaro, entered the vehicle, and sat in the front passenger seat. Officer Hatfield had a clear view of Adkins and the driver, who was later identified as Moore. The officer saw Moore give Adkins an unidentifiable object and watched Adkins hand Moore the $200 buy money. As they had planned, Adkins signaled to Officer Hatfield when the transaction was complete. Thereafter, Adkins gave Officer Hatfield a clear plastic bag containing a white substance that was later identified as fentanyl.

Three officers approached the Camaro after Adkins purchased the fentanyl from Moore. As Officer Hatfield removed Moore from the driver's seat, the money Adkins gave to Moore fell from his lap. Sanders and Moore were immediately arrested, and the officers searched the vehicle. During the vehicle search, the officers found a rock-like substance wrapped in brown paper in the backseat.

The two substances were submitted to a testing lab, and both were identified as fentanyl. . . . On May 16, 2016, the State charged Moore with Level 4 felony conspiracy to commit dealing in a narcotic weighing at least one gram, and Level 5 felony

dealing in a narcotic drug. The State also alleged that Moore is an habitual offender.

*Moore v. State*, No. 15A01-1711-CR-2767, 2018 WL 3192898, at *1-2 (Ind. Ct. App. June 29, 2018) (quotations and record citations omitted).

[3] Following a bench trial, Moore was found guilty as charged. A pre-sentence investigation report was prepared and filed with the trial court. On October 25, 2017, the trial court held a sentencing hearing. Moore's girlfriend testified that Moore was involved in a car accident in 2014. Days after the accident, Moore suffered a massive heart attack and underwent heart surgery and has endured numerous bypasses since. She testified that he has suffered from complications and has ongoing vascular and cardiac issues requiring frequent medical care.

[4] In imposing a sentence, the trial court detailed the nature of Moore's offense: it was a buy for what the buyer believed to be heroin but was actually fentanyl, an extremely dangerous drug; the evidence demonstrated this was "not a user selling a little, to go use a little" but rather a "drug deal for profit"; and Moore's culpability was high and the act took "a significant amount of time[.]" [Prior Case] Transcript of the Evidence, Volume 2 at 53.

> [T]his wasn't a moment where [Moore]'s intoxicated and something just happens . . . [I]f it was a regular business deal, I would have commended him for his patience, and courtesies, as they're talking on the phone, he drove all over this county trying to find the location, he was very respectful, and if it was a regular business deal, it would have been commendable. But, the fact that he was delivering fentanyl, makes his culpability high, this was not a kneejerk decision, this was a plan. The severity of the

crime and potential damage to others is very high . . . . Heroin is a deadly drug in itself, but if a heroin user believes they got a gram of heroin, and it's a full gram of fentanyl, that's extremely dangerous and deadly in its self [sic].

*Id*. at 53-54. The trial court found Moore's serious medical condition a mitigating factor. In addition, the trial court considered Moore's juvenile and adult criminal history, as well as evidence demonstrating Moore's extensive knowledge of drugs and gang activity. The trial court sentenced Moore to serve five years for his dealing in a narcotic drug conviction and ten years for his conspiracy to commit dealing in a narcotic drug to be served concurrently. The trial court enhanced Moore's sentence by eighteen years based on his habitual offender status. Ultimately, Moore was sentenced to serve an aggregate sentence of twenty-eight years executed in the DOC. *See* [Prior Case] Appellant's Second Corrected Appendix, Volume 3 at 69-74.

[5]     Moore appealed and challenged the sufficiency of the evidence for his convictions of dealing in a narcotic drug and conspiracy to commit dealing in a narcotic drug weighing at least one gram. On June 29, 2018, in an unpublished Memorandum Decision, a panel of this court affirmed Moore's Level 5 felony dealing in a narcotic conviction but reversed his conviction for Level 4 felony conspiracy to commit dealing in a narcotic drug, concluding that the State failed to prove that the weight of the fentanyl was at least one gram. *Moore*, 2018 WL 3192898, at *3-4. Therefore, this court remanded the case to the trial

court with instructions to enter judgment for conspiracy to commit dealing in a narcotic drug as a Level 5 felony, and to impose a new sentence.[1] *Id.*

[6] On November 2, 2018, the trial court held a sentencing hearing during which the trial court took judicial notice of the underlying bench trial, pre-sentence investigation report, and all documents on file. *See* Transcript of [November 2, 2018] Sentencing Hearing, Volume II at 4-5.[2] The trial court again found Moore's physical health a mitigating factor and reiterated the nature of the offense: that the drug in this case was between .97 grams and 1.05 grams of fentanyl; the potential of harm or death to the user was high because "if Fentanyl had been in the same dosages as Heroin had been used, the outcome for the user is obviously much different, if not death"; and Moore's culpability was high as he was willing to sell to an informant in the presence of an undercover officer. *Id.* at 23.

[7] At the conclusion of the hearing, the trial court imposed a six-year sentence. The trial court subsequently issued its Abstract of Judgment entering the

---

[1] Indiana Code section 35-48-4-1(c) states that the offense is a Level 4 felony if the amount of drug involved is at least one gram but less than five grams. Therefore, given that the State failed to prove Moore had at least one gram, Moore could not be convicted of Level 4 felony dealing in a narcotic drug. However, regardless of the amount, Moore could be convicted dealing in a narcotic drug as a Level 5 felony. *See* Ind. Code 35-48-4-1(a)(2).

[2] The State also moved to dismiss Moore's habitual offender enhancement at this hearing. Shortly after Moore was originally sentenced in October 2017, our supreme court issued its opinion in *Calvin v. State*, 87 N.E.3d 474, 479 (Ind. 2017), which held that, under the plain meaning of the habitual-offender statutes, all non-Indiana felonies count as Level 6 felonies. Therefore, based on Moore's prior convictions, the State moved to dismiss Moore's habitual offender status as it was no longer a valid enhancement and the trial court granted the motion. *See* Tr. of [November 2, 2018] Sentencing Hearing, Vol. II at 4.

following judgment: a finding of guilty on Count I, dealing in a narcotic drug, a Level 5 felony; finding of not guilty on Count II, conspiracy to commit dealing in a narcotic drug, a Level 4 felony; and dismissal of Count III, habitual offender status. *See* Corrected Appellant's Appendix, Volume 3 at 169-170. The trial court sentenced Moore to serve six years on Count I to be executed in the DOC. *See id*.

[8] Moore appealed and the State filed a Motion to Remand with this court arguing that the trial court failed to follow this court's sentencing instructions as directed in *Moore.* On March 25, 2019, this court granted the State's motion in part, dismissed Moore's appeal without prejudice, and remanded the case to the trial court with instructions to reconsider its sentencing order in light of this court's June 29, 2018 Memorandum Decision. *Id*. at 199.

[9] Following a sentencing hearing on April 30, 2019, during which no additional evidence was presented, the trial court issued an Amended Judgment of Conviction and Sentencing Order, in which Count II, conspiracy to commit dealing in a narcotic drug as a Level 5 felony, was merged into Count I due to double jeopardy concerns. *See* Appealed Order at 1.[3] The trial court entered judgment of conviction on Count I, dealing in a narcotic drug, a Level 5 felony, and sentenced Moore to serve six years. Moore now appeals.

---

[3] Count III remained dismissed.

# Discussion and Decision

## I. Inappropriate Sentence

### A. Standard of Review

Article 7, sections 4 and 6 of the Indiana Constitution authorize independent appellate review and revision of sentences through Indiana Appellate Rule 7(B). *King v. State*, 894 N.E.2d 265, 267 (Ind. Ct. App. 2008). Rule 7(B) provides, "The Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Sentencing decisions rest within the discretion of the trial court and, as such, should receive considerable deference. *Cardwell v. State*, 895 N.E.2d 1219, 1222 (Ind. 2008). "Such deference should prevail unless overcome by compelling evidence portraying in a positive light the nature of the offense (such as accompanied by restraint, regard, and lack of brutality) and the defendant's character (such as substantial virtuous traits or persistent examples of good character)." *Stephenson v. State*, 29 N.E.3d 111, 122 (Ind. 2015).

The defendant bears the burden of demonstrating his sentence is inappropriate under the standard, *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006), and we may look to any factors in the record for such a determination, *Reis v. State*, 88 N.E.3d 1099, 1102 (Ind. Ct. App. 2017). Ultimately, "whether we regard a sentence as [in]appropriate at the end of the day turns on our sense of the culpability of the defendant, the severity of the crime, the damage done to

others, and myriad other factors that come to light in a given case." *Cardwell*, 895 N.E.2d at 1224.

## B.  Nature of the Offense

[12]    Moore contends his six-year sentence is inappropriate in light of the nature of his offense because the aggregate weight of the drugs was approximately one gram, he was not in possession of a weapon, and no one was injured during the commission of the crime.  We are unpersuaded that these factors render Moore's sentence inappropriate.

[13]    The advisory sentence is the starting point our legislature has selected as an appropriate sentence for the crime committed.  *Childress*, 848 N.E.2d at 1081. The sentencing range for a Level 5 felony is between one and six years, with an advisory sentence of three years.  Ind. Code § 35-50-2-6(b).  Here, the trial court sentenced Moore to six years, the maximum sentence, for his dealing in a narcotic drug conviction.

[14]    The nature of the offense is found in the details and circumstances of the commission of the offense and the defendant's participation in it.  *Washington v. State*, 940 N.E.2d 1220, 1222 (Ind. Ct. App. 2011), *trans. denied*.  When evaluating a defendant's sentence that deviates from the advisory sentence, we consider whether there is anything more or less egregious about the offense as committed by the defendant that distinguishes it from the typical offense accounted for by our legislature when it set the advisory sentence.  *Moyer v. State*, 83 N.E.3d 136, 142 (Ind. Ct. App. 2017), *trans. denied*.

As the trial court acknowledged, Moore's crime was severe and the potential damage and harm to others was very high. Moore sold what the buyer believed to be heroin but was actually fentanyl, a much more powerful and dangerous drug. As the trial court explained at the 2017 sentencing hearing, "Heroin is a deadly drug in itself, but if a heroin user believes they got a gram of heroin, and it's a full gram of fentanyl, that's extremely dangerous and deadly in its self [sic]." [Prior Case] Tr., Vol. 2 at 53-54. Therefore, had the buyer in this case actually been a user rather than an informant, who used the drugs believing it was heroin, the consequence could have been fatal. Although Moore did not employ a weapon or injure anyone during the transaction, the mere "absence of physical harm is not an automatic mitigating circumstance such that it would require a lesser sentence than would otherwise be imposed." *Neale v. State*, 826 N.E.2d 635, 638 (Ind. 2005).

The trial court also considered Moore's high culpability in imposing the maximum sentence. The evidence demonstrates that the transaction was a carefully crafted plan requiring a great deal of patience, communication, and a significant amount of time; it was not an impulsive and thoughtless act. The nature of the offense is extremely serious given that Moore sold approximately one gram of fentanyl. In sum, we conclude that the nature of the offense does not warrant revision of Moore's maximum sentence.

## C. Character of Offender

Moore also argues his character renders his sentence inappropriate. Although Moore acknowledges his criminal history, he argues that the "aggravating effect

of his criminal history is tenuous and substantially outweighed by [his] significant medical conditions. [His] debilitating and potentially terminal medical conditions work a substantial hardship on him during any period of incarceration." Appellant's Amended Brief at 13. We disagree.

[18] The "character of the offender" portion of the Rule 7(B) standard permits a broader consideration of the defendant's character. *Anderson v. State*, 989 N.E.2d 823, 827 (Ind. Ct. App. 2013), *trans. denied*. "A defendant's life and conduct are illustrative of his or her character." *Morris v. State*, 114 N.E.3d 531, 539 (Ind. Ct. App. 2018), *trans. denied*. And the trial court's recognition or non-recognition of aggravators and mitigators serves as an initial guide in determining whether the sentence imposed was inappropriate. *Stephenson v. State*, 53 N.E.3d 557, 561 (Ind. Ct. App. 2016).

[19] When considering the character-of-the-offender prong of our inquiry, one relevant consideration is the defendant's criminal history. *Rutherford v. State*, 866 N.E.2d 867, 874 (Ind. Ct. App. 2007). "The significance of a criminal history . . . varies based on the gravity, nature, and number of prior offenses in relation to the current offense." *Id*. And this court has held that "[e]ven a minor criminal record reflects poorly on a defendant's character." *Reis*, 88 N.E.3d at 1105.

[20] Moore's pre-sentence investigation report reveals that he has an extensive criminal history which began in 1998 when Moore was nine years old. Corrected Appellant's App., Vol. 3 at 78. As a juvenile, Moore was

adjudicated a delinquent for various crimes, including assault; two adjudications for theft; two adjudications for violating a court order; unauthorized use of a motor vehicle; possession of marijuana; receiving stolen property in an amount greater than $5,000; fleeing a police officer; and aggravated robbery. Moore's adult criminal history is comprised of convictions for robbery, robbery with specifics, felonious assault with specifics, having weapons under disability, drug possession, and driving under suspension. *See id*. at 78-81.[4] There is no question that Moore's criminal history reflects poorly on his character.

[21] The trial court found Moore's medical issues, which are well documented in the record, a mitigating factor. Moore's DOC medical records were admitted into evidence at the November 2, 2018 sentencing hearing and testimony revealed that Moore underwent a heart procedure while incarcerated. *See generally* [Confidential] Volume of Exhibits, Volume 1-2. Although we are sympathetic to Moore's various medical issues, every incarceration involves hardship, Moore's medical condition pre-dates the instant offense, and there is no evidence he is not receiving adequate medical care while incarcerated. Furthermore, despite Moore's poor health and frequent contact with our justice system, he was not deterred from committing the instant and potentially lethal offense. *See Rutherford*, 866 N.E.2d at 874 ("Despite . . . frequent contact with the criminal justice system and the police power of the State, [the defendant]

---

[4] These crimes were all prosecuted in Ohio.

was not deterred from committing the present offense.").  We conclude Moore's sentence is not inappropriate in light of his character.

# Conclusion

After due consideration of the sentence imposed by the trial court, the nature of Moore's offense, and his character, we conclude Moore's six-year sentence is not inappropriate.  Accordingly, we affirm.

Affirmed.

Bradford, C.J., and Altice, J., concur.